STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,

v.

David DUNLAP, Respondent.

No. SCBD 3972.

Supreme Court of Oklahoma.

July 5, 1994.

Gloria Miller White, Asst. Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Steve Nash, Oklahoma City, for respondent.

ALMA WILSON, Justice:

The Bar Association filed a complaint against David M. Dunlap (Respondent) alleging that he had engaged in unprofessional conduct. Respondent and the Oklahoma Bar Association stipulated to findings of fact and conclusions of law. The parties joined in recommending that a six month suspension from the practice of law be imposed as discipline, and that Respondent be required to pay costs of the proceedings. The trial panel of the Professional Responsibility Commission has adopted the stipulations of fact, conclusions of law, and the recommendation for discipline.

The facts as stipulated and approved by the Trial Panel are as follows: On January 13, 1989, Vicky Kesterson (Kesterson) entered into a contingent fee contract with the respondent, David Dunlap. The parties agreed that Respondent would represent Kesterson in a claim for injuries Kesterson sustained when she slipped and fell in a restaurant.

On March 21, 1989, the restaurant's insurance carrier paid Respondent $713.43, by check, to cover medical expenses already accumulated by Kesterson. On May 7, 1989, Respondent, who did not have a client trust account, deposited the check into his general operating account.

On July 26, 1989, Respondent received a second check from the insurer, on Kesterson's behalf. Respondent opened a client trust account in August of 1989. The second check, in the amount of $4,286.57, was deposited into the attorney's trust account on August 2, 1989.

Between March 1989 and March 1991, Respondent paid all but $10–$35 either directly to Kesterson, or to third parties on her behalf. In March 1991, the matter settled for an additional $100,000, for a total, including the two previous payments, of $105,000.

The $100,000 payment was made in the form of five checks: One for $83,212.96 to Respondent, who deposited the full amount into his trust account. Three additional checks totalling $14,597.54 were paid directly to medical providers. The 5th check was made payable jointly to Kesterson and to her physician.

On March 6, 1991, Respondent paid Kesterson $40,000. While most other medical and legal expenses were paid, the client and Respondent agreed that a portion of the settlement would remain in Respondent's trust account. The money was intended to cover future expenses in a companion products liability case, as well as additional medical expenses.

During the course of Ms. Kesterson's representation, Respondent failed to keep accurate financial records. On several occasions the balance of the trust account fell a few hundred dollars below the amount Respondent was to have been holding in trust for Ms. Kesterson. A final accounting revealed that Kesterson actually received $350 more than she was entitled to under the fee contract.

When the irregularities occurred, Respondent was experiencing marital problems. He is now divorced and is receiving counseling regarding the relationship issues. Respondent has acknowledged responsibility for the acts of misconduct and has implemented new office accounting procedures.

The parties agree that Respondent has violated Rules 1.5(c) and 1.15(a) and (b) of the Oklahoma Rules of Professional Conduct, and Rule 1.4(b), Rules Governing Disciplinary Proceedings. Rule 1.15(a) requires an attorney to maintain client funds in an account separate from the lawyer's personal or business accounts, and to keep complete records of transactions involving client funds.[1] Rule 1.15(b) directs lawyers to notify their clients whenever money is received on their behalf, and to promptly deliver the funds and/or a full accounting of any funds due to a client upon request.[2] Rule 1.4 of the Rules

Governing Disciplinary Proceedings sets out requirements for client trust accounts[3], and provides that failure to account for and deliver funds upon demand constitutes conversion.[4]

■ Although the recommendations of the Trial Panel are given great weight, this Court has authority to disregard any or all of the Trial Panel's findings where appropriate.[5] After a de novo review of the record, we accept the Panel's findings of fact and law, but we decline to follow the Panel's recommendation for discipline.

This Court has assigned varying levels of discipline in matters involving mishandling of client funds. The disciplinary range has extended from censure to disbarment, depending in large part on the degree of harm to the client.[6]

1. Oklahoma Rules of Professional Conduct, 5 O.S.1991, ch. 1, app. 3–A, Rule 1.15(a) provides: "A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the written consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of representation."

2. Oklahoma Rules of Professional Conduct, 5 O.S.1991, ch. 1, app. 3–A, Rule 1.15(b) provides: "Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property."

3. Rules Governing Disciplinary Proceedings, 5 O.S.1991, ch. 1, app. 1–A, Rule 1.4(a) provides: "All members of the Bar who are required under the Oklahoma Rules of Professional Conduct, Rule 1.15, to maintain a trust account for the deposit of clients' funds entrusted to said attorney, shall do so and furnish evidence thereof as hereinafter provided. The Executive Director of the Oklahoma Bar Association shall annually mail a card to each lawyer requesting the name

of the bank or banks in which the lawyer carries any trust account, the name under which the account is carried and the account number. Provision will be made on the card for a response by lawyers who do not maintain a trust account and the reason for not maintaining said account. Lawyers shall have thirty days from the receipt of said inquiry to respond. Information received by the Association as a result of such inquiry shall remain confidential unless a grievance is filed against a lawyer which, in the opinion of the Professional Responsibility Commission, may warrant disciplinary action in regard to the handling of said trust account. Failure of any lawyer to respond giving the information requested will be grounds for appropriate discipline."

4. Rules Governing Disciplinary Proceedings, 5 O.S.1991, ch. 1, app. 1–A, Rule 1.4(b) provides:

"Where money or other property has been entrusted to any attorney for a specific purpose, he must apply it to that purpose. He may not avail himself of a counterclaim or set off for fees against any money or other property of his client coming into his hands for such specific purpose, and a refusal to account for and deliver over such money or property upon demand shall be deemed a conversion. This does not apply to the retention of money or property otherwise coming into the hands of a lawyer and upon which the lawyer has a valid lien for his services."

5. *State ex rel. Okla. Bar Ass'n v. Miskovsky*, 832 P.2d 814, 817 (Okla.1992).

6. *State ex rel. Okla. Bar Ass'n v. McManus*, 852 P.2d 727 (Okla.1993) (public censure appropriate discipline for attorney who commingled personal

In *State ex rel. Okla. Bar Ass'n. v. Johnston*, 863 P.2d 1136 (Okla.1993), we articulated a continuum of culpability employed in evaluating mishandling of funds in violation of Rule 1.15. We discussed commingling, simple conversion, and misappropriation, and assigned ascending levels of culpability to the behaviors, with misappropriation being the most offensive. *Johnston*, 863 P.2d at 1144.

■ An attorney has commingled funds when he has failed to keep client moneys, or money accepted on behalf of a client, in an account which is separate from that of the attorney. *Johnston*, 863 P.2d at 1145. In *Johnston*, we found an attorney had committed commingling when he withdrew trust account funds intended for his client's medical bills and placed them in his personal account.[7] For this and other acts of misconduct, Johnston was suspended for four months.[8]

■ Simple conversion, the next serious offense, occurs when the attorney uses a client's money for some purpose other than that for which it was intended. In *State ex rel. Okla. Bar n Ass'n v. Farrant*, 867 P.2d 1279 (Okla.1994), the attorney committed simple conversion when he applied a client payment, intended for a private investigator's services, to his own fees. The private investigator eventually instituted a collection action against the client. For this and other infractions, the attorney was suspended from the practice of law for one year.[9]

■ Finally, misappropriation occurs "when an attorney has *purposely* deprived a client of money by way of *deceit and fraud*. A lawyer found guilty of intentionally inflicting *grave economic harm* in mishandling clients' funds is deemed to have committed this most grievous degree of offense." (Court's emphasis.) *Johnston*, 863 P.2d at 1145. In accordance with the Rules of Professional Conduct, this Court has administered severe consequences for attorneys who purposefully misappropriated client funds.[10] In *State ex rel. Okla. Bar Ass'n v. Raskin*, 642 P.2d 262 (Okla.1982), the attorney was disbarred after he used client funds to pay his own mortgage and car payments. The attorney's misconduct caused the IRS to place a lien on the client's home and property. The same attorney exposed a client in a criminal case to contempt charges when the attorney misappropriated funds intended for the client's restitution. *Raskin*, 642 P.2d at 263.[11]

funds in his client trust account, neglected client concerns and failed to respond to Bar grievance).

See *State ex rel. Okla. Bar Ass'n v. Geb*, 494 P.2d 299 (Okla.1972) (twelve month suspension for attorney with previous discipline who commingled and failed to promptly remit client funds); *State ex rel. Okla. Bar Ass'n v. Kessler*, 818 P.2d 463 (Okla.1991) (attorney's license suspended for two years and one day for commingling client funds, use of moneys for unauthorized purposes and misrepresentation to court that funds had been used for designated purpose). *State ex rel. Okla. Bar Ass'n v. Gasaway*, 863 P.2d 1189 (Okla.1993) (attorney disbarred for repeatedly commingling clients' funds, converting property of clients, and other improprieties with client funds).

7. See also *State ex rel. Okla. Bar Ass'n v. Kamins*, 568 P.2d 627 (Okla.1977) (attorney's license to practice law suspended for four months when insurance claim settlement moneys commingled with personal funds, attorney was unable to produce funds at clients' request and repayment delayed nearly one year).

8. Johnston also converted funds, made a false statement to a court, failed to act promptly in his

client's interest, and failed to communicate with his clients.

9. See *State ex rel. Okla. Bar Ass'n v. Cummings*, 863 P.2d 1164 (Okla.1993) (applying fees intended for deposition expenses toward claimed attorney fee was simple conversion).

10. Rules Governing Disciplinary Proceedings, 5 O.S.1991, ch. 1, app. 1–A, Rule 1.4(c) provides: "Theft by conversion or otherwise of the funds of a client shall, if proved, result in disbarment."

11. Disbarment has been warranted in cases of misappropriation or where the attorney has exhibited a pattern of misconduct: *State ex rel. Okla. Bar Ass'n v. Schlegel*, 808 P.2d 671 (Okla. 1991) (Conversion of funds; contempt for failure to pay co-counsel his attorney fees, and creation of a scheme to distort attorney's fees in an effort to misappropriate funds from a trust account); *State ex rel. Okla. Bar Ass'n v. Perkins*, 757 P.2d 825 (Okla.1988) (court noted absence of mitigating factors in multiple cases of commingling and conversion, use of clients' funds for personal benefit and without authorization, failing promptly to repay clients' funds upon their request, tendering post-dated check and using schedule to return the funds).

In the instant case, the attorney did not initially have a client trust account and commingled a portion of his client's fees with his personal funds. The attorney later allowed the balance of his trust account to fall to a level below the amount owed to his client. We have already noted that simple commingling falls at the lower end of a continuum of culpability.

■ The act of allowing the level of a client trust account to fall below the amount held on behalf of clients, without more, is also one of the less egregious forms of mishandling of client funds. In *State ex rel. Okla. Bar Ass'n. v. Stephenson*, 798 P.2d 1078 (Okla.1990), an attorney received $900 for a debt owed to his client. Although the attorney deposited the entire amount into his trust account, the account level fell below the amount due to the client during four separate months. Ultimately, the attorney paid most of the money due to the client, however $40.00 was not paid until the Court ordered restitution.

In *Stephenson*, the parties agreed that the attorney's misconduct resulted from "inattention, negligence, and alcohol abuse." The attorney was publicly censured and was allowed to retain his license to practice during a probationary period of one year.

■ This Court remains firm in its assertion that all cases involving mishandling of client funds are significant. The mere appearance of impropriety involving money entrusted to a lawyer reflects upon the integrity of the entire profession. Therefore, it is clear that Respondent's behaviors warrant professional discipline.

At the same time, this Court has recognized a distinction between irregular record-keeping and actual misuse of funds. In *State ex rel. Okla. Bar Ass'n v. Miskovsky*, 824 P.2d 1090, 1101 (Okla.1991) we found that three counts of mishandling funds "exhibited woefully sloppy, neglectful and at times incompetent record keeping instead of theft by conversion." [12] In *State ex rel. Okla. Bar Ass'n v. Moss*, 794 P.2d 403, 411 (Okla.1990) we similarly attributed misuse of clients' funds to neglectful record keeping, rather than to conversion.[13]

In the instant case there is clear and convincing evidence that the attorney has violated rules of professional conduct: He should have deposited the first $700 into a trust account. After he finally opened the trust account, he should have clearly maintained the balance and sufficient records to easily trace funds. However, there is insufficient evidence to suggest that Respondent intentionally misused or converted his client's funds. To the contrary, the evidence suggests that Respondent's shortcomings were inadvertent. Respondent's records, once clarified, established that the client had actually been overpaid. Respondent never refused nor was unable to pay the client or her creditors. The client suffered no delay in payment, nor any inadequacy of payment.

Further, there are mitigating factors in this case which suggest that Respondent is not likely to repeat his improper behaviors.[14] We note that throughout the proceedings Respondent has steadfastly acknowledged his wrongdoing, and has cooperated with the investigative process. As was true in *Stephenson*, Respondent was plagued by personal problems when the irregularities occurred. He experienced marital difficulties, but has since divorced, and has initiated counseling. He has implemented new office

---

12. The attorney, who had been disciplined previously, was suspended from the practice of law for eighteen months. In one instance the attorney misrepresented to his client that medical bills had been paid, when in fact they had not. In another, the attorney failed to pay court fees for a client in a criminal case, thereby exposing the client to possible revocation of a suspended sentence. *Miskovsky*, 824 P.2d at 1096.

13. In *Moss*, the attorney acknowledged that he had used a client's money to pay his own bills. In another complaint, Moss could not account for over $10,000. In both cases, the clients were ultimately reimbursed. The attorney's license to practice law was suspended for two years and one day.

14. In *State ex rel. Okla. Bar Ass'n v. Landman*, 784 P.2d 1064 (Okla.1989) we acknowledged the validity of mitigating factors including lack of prior discipline, personal tragedy affecting attorney behavior, responsible cooperation with bar authorities, and ready implementation of changes designed to avoid further incidence of impropriety.

accounting procedures. The facts suggest, then, that Respondent's misconduct can be attributed to one or two identifiable factors which have since been eliminated.

■ Our primary goal in imposing discipline for attorney misconduct is not punishment, but protection of the public and of the courts. *State ex rel. Okla. Bar Ass'n v. Bradley,* 746 P.2d 1130, 1134 (Okla.1987). Through our decisions, we must justify public confidence in the courts by maintaining the legal profession's exacting ethical standards.

In the disciplinary matter before us, a six month suspension would accomplish nothing in furtherance of our goals. While we cannot excuse Respondent's behaviors, we find that he is unlikely to repeat his offenses. Suspension is unnecessary to protect the public or the integrity of the courts. Respondent's behaviors are less egregious than those of attorneys who have been suspended for six months.[15] We therefore reprimand David A. Dunlap and admonish him that improprieties in clients' financial matters will not be condoned. We order that Respondent bear the costs of this proceeding in the amount of $319.40.

HODGES, C.J., and HARGRAVE, SUMMERS and WATT, JJ., concur.

OPALA and KAUGER, JJ., not participating.

SIMMS, Justice, with whom LAVENDER, Vice Chief Justice, joins, dissenting:

I would suspend the Respondent for a period of six months as stipulated and agreed by the parties.

---

**15.** *See State ex rel. Okla. Bar Ass'n v. Carpenter,* 863 P.2d 1123 (Okla.1993) (six month suspension followed by supervised probation where attorney lent money to clients, commingled funds, failed to promptly remit funds and failed to keep proper records); *State ex rel. Okla Bar Ass'n v. Brown,* 773 P.2d 751, 753 (Okla.1989) (false endorsement of check payable to client, failure to promptly notify client of funds received, affirmative misrepresentation to client regarding distribution of funds, lying under oath during deposition).