2002 OK 4

**STATE of Oklahoma, ex rel., OKLA-
HOMA BAR ASSOCIATION,
Complainant,**

v.

**Larry Dean WAGENER, Respondent.**

No. SCBD 4552.

Supreme Court of Oklahoma.

Jan. 22, 2002.

Loraine D. Farabow, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Complainant.

James A. Beckert, Tulsa, OK, for Respondent.

BOUDREAU, J.

¶1 Complainant, Oklahoma Bar Association, brought Rule 6 disciplinary proceedings against Respondent, Larry Dean Wagener,[1] in a four count complaint alleging 1) client neglect, 2) failure to adequately respond to the Oklahoma Bar Association, 3) misrepresentation regarding the whereabouts of client property and failure to safe-keep that same property and 4) misrepresenting the facts and circumstances surrounding the disappearance of the property entrusted to Respondent.

¶2 Respondent and the bar association submitted joint stipulations regarding each of the allegations, which were incorporated into the report of the Professional Responsibility Tribunal. A hearing was held on January 20, 2001 at which Respondent was the only witness. The Tribunal, in keeping with the recommendations and request of the bar association, determined that there was clear and convincing evidence that Respondent violated Counts I, II, III and IV of the Complaint and recommended Respondent be suspended from the practice of law for a period of thirty (30) days.

¶3 We find the evidence establishes clearly and convincingly the allegations in Counts I, II and III of the Complaint; we find the evidence does not support in a clear and convincing fashion the allegations contained in Count IV. For the reasons set out herein, Respondent is suspended from the practice of law for a period of sixty (60) days and ordered to pay the costs of these proceedings in the amount of $891.19 in accordance with Rule 6.16 of the Rules Governing Disciplinary Proceedings, 5 O.S. Ch. 1, App. 1–A (RGDP).

1. Respondent's official Oklahoma Bar Association roster address is: Larry Dean Wagener, OBA # 15613, 13330 S. Memorial Drive # 7, Bixby, Oklahoma 74008.

## I.   Count I, The Layman Complaint

¶ 4 In March 1997, Kenneth Layman retained Respondent to represent him in a criminal matter and a related civil suit, stemming from an alleged assault, battery and trespass which occurred between Layman and an acquaintance.  Less than a month later, Respondent filed an action on behalf of Layman in Tulsa County district court. However, the relationship between Layman and Respondent rapidly deteriorated over the course of the next year.  Respondent acknowledged that he regularly failed to return Layman's phone calls or communicate with him during this time.  Respondent testified that these failures were due at least in part to the fact that Respondent and his legal assistant had grown afraid of Layman, as he would frequently yell and curse at them.  In February 1999, Layman filed a grievance with the county bar association alleging Respondent completely neglected his legal matters.

¶ 5 Prior to the filing of Layman's February 1999 grievance, the district court granted Respondent leave to withdraw from Layman's case as attorney of record, at a hearing in October 1998.  Respondent did not mail a copy of his motion to withdraw to Layman, although Respondent testified that his legal assistant notified Layman of its setting a week prior to the hearing.  Nevertheless, Layman did not attend the hearing on Respondent's motion to withdraw as counsel. Respondent also failed to mail Layman a copy of the order allowing withdrawal, failed to provide him any information that would allow him to protect his own interests and failed to surrender papers and property belonging to his client.  Layman's case was dismissed without prejudice in February 1999.

¶ 6 In July 1999, the bar association subpoenaed Respondent for his deposition in the Layman matter.  The bar directed Respondent to contact Layman in writing and advise him of his withdrawal, the status of the case, the statutory time limit in which to refile the case and to make arrangements to return the client's file.  Respondent complied with this directive within two days of the deposition.

The notice provided Layman the opportunity to refile his previously dismissed case.

¶ 7 Respondent stipulated and the Tribunal found Respondent's conduct violated the Rules of Professional Conduct, 5 O.S.1991 Ch.1, App. 3–A (RPC), Rules 1.1 (competent representation of one's clients), 1.2 (failing to consult with his client concerning the objectives of representation), 1.3 (diligent representation), 1.4 (communicating with the client), 1.16 (proper withdrawal from representation), 8.4(a) (violate or attempt to violate the RPC).  The record supports the stipulations with regard to the Layman matter and we find Respondent clearly and convincingly violated these provisions of the RPC.

## II.   Failure to Respond to the Oklahoma Bar Association and Office of the General Counsel

¶ 8 The Oklahoma Bar Association notified Respondent on April 27, 1999 that the Layman matter was under formal investigation and a response was due within twenty days.  After the twenty days elapsed, Respondent requested an extension of time to respond, which was granted until June 8, 1999.  Respondent missed this deadline and did not request or receive any further extensions.  Respondent then ignored a call from a bar association investigator and failed to respond to yet another certified letter, eventually necessitating the issuance of a subpoena for his deposition in July 1999.

¶ 9 Respondent stipulated and the Tribunal found that his conduct with regard to Count II of the Complaint clearly and convincingly violated Rule 8.1(b) of the RPC (knowing failure to respond to a lawful demand for information from the bar association) and Rule 5.2 of the RGDP (failure to respond within twenty days to grievance).  The record supports the stipulations with regard to Respondent's failure to respond adequately to the Layman bar matter and we find Respondent clearly and convincingly violated these provisions of the RPC and RGDP.

## III.   The Campbell Grievance

¶ 10 In May 1995, Howard Eugene Campbell's estranged girlfriend, Sandra Byrd, contacted Respondent to represent her

in a claim against Mr. Campbell for breach of contract and intentional infliction of emotional distress. Respondent filed a suit on Ms. Byrd's behalf and Mr. Campbell was served with a copy of the Petition the next day.

¶ 11 Soon thereafter, Ms. Byrd brought two locked briefcases to Respondent's office. Ms. Byrd informed Respondent that Mr. Campbell told her the briefcases contained cash, jewelry and other valuables in excess of $88,000. Ms. Byrd claimed that $8,000 of the money was hers and had been taken from her by her estranged boyfriend, Campbell, and put in the briefcases. She believed the remainder of the contents belonged to Mr. Campbell. Respondent testified that the briefcases were so light, it was difficult to believe they contained anything of substantial value, however, he agreed to have the cases x-rayed in an effort to determine the nature of the contents. He then took possession of the briefcases.

¶ 12 Within days, while the briefcases were still in Respondent's possession, Ms. Byrd and Mr. Campbell apparently reconciled and returned to Respondent's office to demand the return of the briefcases. Respondent informed them that the briefcases were not in his possession and he would have to return them later. Respondent acknowledged at the hearing that this was not the truth. Respondent explained that he withheld the briefcases because he believed Mr. Campbell was forcing Ms. Byrd to abandon her suit and retrieve the briefcases.

¶ 13 Then on June 2, 1995, Respondent's truck was stolen while parked near the Tulsa County courthouse; Mr. Campbell's briefcases were inside.

¶ 14 Mr. Campbell filed suit against Respondent to recover the value of the contents of the lost briefcases. Respondent paid Mr. Campbell approximately $35,000 to settle the suit. Much of the pre-trial discovery which took place in Campbell's suit against Respondent was included for review in this disciplinary proceeding record. The record does not support or suggest that Respondent converted any funds or valuables in the briefcases for his own use.

¶ 15 The bar association presented clear and convincing evidence that Respondent was not candid and honest with his client, Ms. Byrd, nor Mr. Campbell, the owner of the briefcases, when he told them he could not immediately return the briefcases. In addition, the bar association presented clear and convincing evidence showing that Respondent failed to properly safeguard the briefcases placed in his care and they were stolen as a result.

¶ 16 Respondent stipulated and the Tribunal found that Respondent's conduct clearly and convincingly violated Rules 1.2 (abiding clients decisions regarding the scope of representation), 1.15(a) (hold property of client's or third persons separate from lawyer's own property), 1.15(b) (promptly deliver client's property to client on client's request), 1.15(c) (separation of property in which attorney and client claim an interest), 8.4(a) (violating the RPC) and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation) of the RPC. With the exception of Rule 1.15(c) of the RPC, the record supports the stipulations that Respondent clearly and convincingly violated these provisions of the RPC.

¶ 17 With regard to the alleged violation of Rule 1.15(c), the record does not clearly and convincingly show Respondent claimed any interest in the briefcases or their contents, as required by this provision. Accordingly, this provision does not provide a basis for discipline in this case.

## IV. Misrepresentations to the Bar Association Regarding the Property and Funds Entrusted to Respondent

¶ 18 The bar association alleges that discrepancies between a 1996 deposition given by Respondent in the Campbell suit and a February 2000 interview of Respondent conducted by a bar association investigator amounted to intentional misrepresentation to the bar by Respondent. In February 2000, Respondent told the bar association that he believed his truck and the briefcases had already been stolen when Ms. Byrd and Mr. Campbell came to his office demanding their return. However, when his memory was refreshed by his 1996 deposition testimony in

which Respondent acknowledged the briefcases were still in his possession when Campbell and Byrd demanded their return, Respondent admitted to the investigator that his memory of the events was likely better at the time of his deposition four years earlier.

¶ 19 There was a similar inconsistency between Respondent's earlier 1996 statements and 2000 statements regarding whether Respondent intended to have the briefcases x-rayed when he accepted possession of them. In 1996, Respondent and Ms. Byrd both made references to Respondent attempting to discern the contents of the briefcases, possibly having them x-rayed. However, in 2000 Respondent said that he did not know why he would have said this, because he did not remember attempting to have them x-rayed or promising to do so. When the bar association investigator pointed out the inconsistency with Respondent's previous statements, Respondent said he had no memory of making such a promise and did not believe he would have made such a promise. However, Respondent again acknowledged that his 1996 statements may be more accurate due to the fact those statements were made much closer to the events in question.

¶ 20 The stipulations say that "Respondent could not explain the discrepancies between his April 30, 1996 sworn testimony and his statements to [the bar association's investigator in 2000]." However, Respondent provided some explanation when he admitted that in February 2000, five years had passed since the events in question and his memory of the 1995 events was likely more accurate in 1996, due to the closer proximity of those statements to the actual events in question.

¶ 21 The record supports Respondent's explanation of a memory made unclear with the passage of time just as strongly as it suggests intentional deceit, fraud or dishonesty theorized by the bar association. The bar association simply did not meet its burden with regard to this allegation. Furthermore, Respondent's stipulation (drafted by the bar association) is not a definitive statement of deceit or misrepresentation, but rather a simple acknowledgment of the inconsistencies themselves. As a result, we do not find in the record clear and convincing evidence of misconduct with regard to the allegation contained in this count of the Complaint.

## V. Mitigating Circumstances

¶ 22 Respondent and the bar association entered into several stipulations with regard to mitigating circumstances. First, Respondent was admitted to practice law in 1993 and has never before been disciplined for professional misconduct. Second, during the time the Layman and Campbell events happened, Respondent experienced serious family stresses. He was involved in an auto accident, which was followed shortly thereafter by two additional accidents in which Respondent's family members were involved. Respondent's adult daughter was seriously injured in one of the subsequent accidents and the responsibility of caring for her children for a number of months fell upon Respondent. Third, Respondent acknowledges mishandling both the Layman and Campbell matters and realizes his conduct, in both cases, fell below that required of a licensed attorney in Oklahoma. He has expressed his remorse for improper conduct. Fourth, he is also now aware of the steps which must be taken to adequately protect client property and has further implemented proper caseload management by limiting his practice volume and declining cases outside his area of practice.

¶ 23 Although not identified as a mitigating factor in the stipulations, we note Respondent timely satisfied the settlement agreement with Mr. Campbell and paid this debt in full. The Tribunal did not identify any factors enhancing discipline for Respondent in this case.

## VI. Discipline

¶ 24 This Court possesses original and exclusive jurisdiction in bar disciplinary proceedings. Rule 1.1 RGDP. This Court's review is by de novo consideration of the entire record. State ex rel. Oklahoma Bar Ass'n v. Weeks, 1998 OK 83, ¶ 12, 969 P.2d 347, 351. The Tribunal's findings, conclusions of law, or recommendations of discipline are not binding on this Court. State ex rel. Oklahoma Bar Ass'n v. Eakin, 1995 OK 106, 914 P.2d 644, 648. "The ultimate re-

sponsibility to impose discipline in a case before this court is ours alone." *Id.*

¶ 25 This Court's primary function in bar disciplinary proceedings is not to punish, but rather to protect the public and determine an attorney's continued fitness to practice law. *State ex rel. Oklahoma Bar Ass'n v. Donnelly,* 1992 OK 164, 848 P.2d 543, 546; *State ex rel. Oklahoma Bar Ass'n v. Mayes,* 1999 OK 9, 977 P.2d 1073, 1082; See also *State ex rel. Oklahoma Bar Ass'n v. Denton,* 1979 OK 116, 598 P.2d 663; *State ex rel. Oklahoma Bar Ass'n v. Hall,* 1977 OK 117, 567 P.2d 975; *State ex rel. Oklahoma Bar Ass'n v. Miskovsky,* 1991 OK 88, 824 P.2d 1090, 1101; *State ex rel. Oklahoma Bar Ass'n v. Colston,* 1989 OK 74, 777 P.2d 920.

¶ 26 We agree with the Tribunal that Respondent's conduct warrants suspension from the practice of law. However, we recommend a sixty (60) day suspension, instead of the thirty (30) days recommended by the Tribunal. Respondent failed to adequately communicate with his client, Layman, throughout the course of representation. Even worse, Respondent failed to notify Layman that he had withdrawn from his case, failed to provide him with any information that would allow him to protect his own interest and failed to surrender papers and property belonging to the client. If it had not been for the directive of the bar association, these failures may have prevented Layman from timely refiling his previously dismissed case.

¶ 27 While Respondent's neglect of Layman is a serious matter, his conduct with respect to the Campbell grievance is even more troubling. Respondent failed to properly inventory property entrusted to him by his client. He then made misleading statements to his client concerning the whereabouts of property she had entrusted to him. Finally, he subsequently failed to properly secure that property, which allowed it to be stolen from his car.

¶ 28 Respondent also failed to act with appropriate urgency and regard for the authority of the Oklahoma Bar Association. He failed to timely respond to a number of requests from the Oklahoma Bar Association. Only after we was ultimately subpoenaed did Respondent begin to cooperate with the bar association.

¶ 29 Each of these violations of professional misconduct demands the imposition of discipline. Our review of the previous decisions of this Court reveals no precise parallels to Respondent's conduct in this case. However, this Court has frequently chosen to impose some form of suspension when intentional misrepresentations are made to a client, the court or the bar. *See State, ex rel., Oklahoma Bar Ass'n v. Stubblefield,* 1988 OK 141, 766 P.2d 979 (misrepresentation in court documents, 30 day suspension); *State, ex rel., Oklahoma Bar Ass'n v. Jaques,* 2000 OK 57, 11 P.3d 621 (forging notary signature warranted 30 day suspension); *State, ex rel., Oklahoma Bar Ass'n v. Lacoste,* 1991 OK 51, 813 P.2d 501 (misrepresentation in response to bar grievance warranted 1 year suspension from practice); *State, ex rel., Oklahoma Bar Ass'n v. Hall,* 781 P.2d 821 (making false statement with regard to ownership of stock certificates, 1 year suspension from practice).

¶ 30 The professional misconduct of Respondent, when balanced against the mitigating factors in his favor, compels us to impose upon Respondent a sixty (60) day suspension from the practice of law. In addition, Respondent is ordered to pay the costs of these proceedings in the amount of $891.19, in accordance with Rule 6.16 of the RGDP.

¶ 31 RESPONDENT IS SUSPENDED FROM THE PRACTICE OF LAW FOR SIXTY (60) DAYS AND ORDERED TO PAY COSTS IN THE AMOUNT OF $891.19.

¶ 32 HARGRAVE, C.J., WATT, V.C.J., LAVENDER, SUMMERS, and WINCHESTER, JJ., Concur.

¶ 33 OPALA, J., with whom HODGES and KAUGER, JJ., join, Concurring in Part and Dissenting in Part.

I concur in the Court's imposition of professional discipline; I dissent from visiting upon this respondent any sanction of less than a ninety (90) day suspension from practice.