2012 OK 35

**STATE of Oklahoma, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Miles C. ZIMMERMAN, Respondent.**

**No. SCBD–5756.**

Supreme Court of Oklahoma.

April 17, 2012.

Loraine Dillinder Farabow, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Miles C. Zimmerman, Chandler, Oklahoma, Pro Se.

## OPINION

WATT, Justice:

¶1 Complainant, Oklahoma Bar Association (the Bar), brought this original proceeding for attorney discipline against Respondent, Miles C. Zimmerman, pursuant to Rule 6, Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2001, Ch. 1, app. 1–A. In its three-count complaint filed against him on June 9, 2011, the Bar alleged he violated Rules 1.1 and 1.4, Oklahoma Rules of Professional Responsibility (ORPC), 5 O.S.2001, Ch. 1, App. 3–A, and ORPC Rule 1.15, 5 O.S.

Supp.2004, Ch. 1, App. 3–A and 5 O.S. Supp. 2008, Ch. 1, App. 3–A. The Bar also alleged violations of Rules 1.3, and 1.4(b), RGDP, 5 O.S.2001, Ch. 1, App. 1–A.

## FACTS AND PROCEDURAL BACKGROUND

### A. Count I

¶2 On June 25, 2010, the Bar received a grievance against Respondent from Janie Phillips, the sister of his former client, Brenda Evans–Crownover (Brenda), complaining about his conduct as her sister's lawyer in a criminal matter. Phillips and her brother, Jim Bowen, hired Respondent in October, 2004, following Brenda's criminal trial in Lincoln County District Court,[1] to represent her at the sentencing stage and to pursue post-conviction and appellate relief as appropriate. He did not represent Brenda at her trial. Phillips and Bowen paid Respondent a total of $7,000.00 for fees, in addition to the sum of $1,650.00 for the cost of a transcript of the criminal trial. It is undisputed that Respondent never obtained a transcript and did not appeal the conviction.

¶3 He filed a motion to reconsider sentencing on October 31, 2005, but the motion was not heard.[2] He filed an application for post-conviction relief on December 7, 2007, which was denied. He testified that he understood it was denied because a timely appeal had not been previously filed and because the application did not show that Brenda was denied an appeal through no fault of her own.[3] Respondent testified that he has since agreed with the Bar that it may

---

1. Brenda was convicted of "Unlawfully Manufacturing a Controlled Dangerous Substance" (Count I); "Unlawful Possession of Controlled Dangerous Substance with Intent to Distribute" (Count II); and "Unlawful Possession of Marijuana" (Count III). She was sentenced on November 30, 2004, to thirty (30) years each on Counts I and II, to run consecutively, and one (1) year on Count III, to run concurrently with Counts I and II.

2. He filed a motion to reconsider sentencing on October 31, 2005, but Judge Vassar refused to set a hearing. He testified he did not ask the judge to make a record of the refusal because he "felt intimidated" by the judge. He filed an application for post-conviction relief on December 7, 2007, which was denied.

3. The application did not make the required showing that the failure to file a timely appeal was through no fault of the defendant. See Rule 2.1(E), Rules of the Court of Criminal Appeals, 22 O.S. Supp.2008, Ch. 18, App., which provides in part:
   **E. Appeal Out of Time.** (1) General Procedures for Obtaining an Out–of–Time Appeal. If petitioner seeks an appeal out of time, the proper procedure is to file an Application for Post–Conviction Relief requesting an appeal out of time. The Application must be filed in the trial court where the judgment and sentence on conviction or the final order denying relief was imposed. **A petitioner's right to appeal is dependent upon the ability to prove he/she was denied an appeal through no fault of his/her own.** See *Blades v. State,* 2005 OK CR 1, 107 P.3d 607; *see also Smith v. State,*

contact Brenda, and that if she wishes for him to file an appeal out of time, he will do the work for her on a *pro bono* basis.

¶ 4 Respondent testified that his client and her family wanted an appeal to be filed on grounds of: (a) the ineffective assistance of trial counsel for, *inter alia,* failing to file a motion to suppress before the trial, and (b) the excessive sentence imposed by the trial court. He assessed the merits of an appeal on those grounds by talking to her trial counsel and to the prosecutor, and by reviewing both the court file and trial counsel's defense file.

¶ 5 Respondent decided not to pursue an appeal for the ineffective assistance of trial counsel for his failure to file a motion to suppress. He testified Brenda told him about an informant whom she believed had set her up by planting drugs at her home. He said the post-trial discussions with Brenda went from pursuing an appeal to efforts to exonerate her, *e.g.,* through a pardon from the governor. However, after speaking to the confidential informant, he received information which not only would **not** have exon-

erated her, but which could have been further damaging to her. He thus decided against seeking a pardon from the governor and decided that filing an appeal for ineffective assistance of counsel for failing to file a motion to suppress was not in her best interests. As to an appeal for excessive sentence, he stated that because the court is given great discretion in sentencing, he believed an appeal would not be worthwhile. He admitted he did not discuss this decision with Brenda or her family and did not keep them informed.

¶ 6 Respondent also learned that Brenda testified on her own behalf at her trial against her lawyer's advice. In so doing, he said she "put the police on trial." Respondent stated Brenda's trial lawyer thought he had the case won until that time. Although the DA did not necessarily agree with trial counsel's assessment to that extent, he felt her testimony clearly damaged her case with the jury.

¶ 7 The Bar alleged the above conduct constituted violations of ORPC Rules 1.1,[4] 1.4,[5] 1.15,[6] and RGDP Rule 1.3.[7]

1980 OK CR 43, 611 P.2d 276. If the trial court recommends an appeal out of time, then petitioner shall file a petition for an appeal out of time in this Court within thirty (30) days of the trial court's ruling. The petitioner must attach to the petition a copy of the post-conviction application for the out-of-time appeal that was filed in the trial court and a certified copy of the trial court's ruling upon that application. This Court will consider the trial court's recommendation and issue an order granting or denying an appeal out of time. If the trial court denies the request, then Petitioner should attach a certified copy of the order denying relief to the petition for appeal to this Court and shall otherwise comply with those procedures for perfecting a post-conviction appeal. See Section V of this Court's Rules. [emphasis added]

(2) Out-of-Time Direct Appeals. When an appeal out of time is granted by this Court in a direct appeal, a Notice of Intent to Appeal and Designation of Record in the form prescribed by Rule 1.14(C), and as set forth in Section XIII, Form 13.4 shall be filed with the clerk of the trial court and the Clerk of this Court within ten (10) days of the date of this Court's order allowing an appeal out of time. The procedure set forth in Sections II and III of this Court's Rules shall then be followed. The clerk of the trial court shall timely file a Notice of Computation or Non-Completion as set out in Rule 2.3. If the appeal record is already on

file with the Court of Criminal Appeals, this should be noted in the Notice of Completion or Non-Completion.

4. Rule 1.1, ORPC, 5 O.S.2001, Ch. 1, App. 3–A:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

5. Rule 1.4, ORPC, 5 O.S.2001, Ch.1, App. 3–A:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

6. Rule 1.15, ORPC, 5 O.S. Supp.2004, Ch.1, App. 3–A, provides, in part:

. . .

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is enti-

## B. Count II

¶ 8 Phillips requested a copy of the trial transcript from Respondent to help her sister. Respondent repeatedly assured her he would provide one but never did. In December, 2009, more than five years after Brenda's conviction, Phillips contacted the courthouse and learned that Respondent had never ordered one. He continued to tell Phillips she would receive a copy. On March 31, 2010, Phillips requested Respondent to give her a copy or to advise when she could obtain the transcript so that she could make a copy of it. She received no response, and soon thereafter, on June 25, 2010, the Bar received Phillips' grievance.

¶ 9 In Respondent's answer, he stated that he had reviewed the files and spoken with defense counsel and the prosecutor, but had decided no appeal would be successful. He never spent the money which was paid by Bowen and Phillips for the transcript. He expressed regret that he did not file what he termed a "pointless appeal." He told the Bar he had no satisfactory answer as to why the money, almost six years later, was still in his possession and that he would not "insult either the Bar or Ms. Phillips with attempting to offer one." He offered to return the money in full with interest or to purchase the transcript.[8]

¶ 10 The Bar alleged the above conduct violated Rule 1.15(b), ORPC, 5 O.S. Supp. 2004, Ch. 1, App. 3–A, Rule 1.15(d), ORPC, 5 O.S. Supp.2008, Ch. 1, App. 3–A, and Rule 1.3, RGDP, 5 O.S.2001, Ch.1, App. 1–A.

## C. Count III

¶ 11 In Count III, the Bar alleged the $1650.00 paid to Respondent for a trial transcript should have remained in his lawyer trust account until he reimbursed the funds in October, 2010, in violation of Rule 1.15(a) and (b), ORPC, 5 O.S. Supp.2004, Ch. 1, App. 3–A, and Rule 1.15(a), (c), (d) and (f), ORPC, 5 O.S. Supp.2008, Ch. 1, App. 3–A. However, the evidence showed the balance in his trust account was significantly lower than that amount on numerous dates, even showing an overdraft of $12,698.10 on November 8, 2007. The Bar also alleges Respondent violated Rules 1.3 and 1.4(b), RGDP, 5 O.S.2001, Ch. 1, App. 1–A.[9]

¶ 12 When Respondent filed his answer to the Bar's complaint, he denied that he had deposited the check for $1650.00 into his trust account. Later, however, after meeting with the Bar's investigator, he agreed the funds had been deposited into that account. Unfortunately, however, he also discovered the check he had written to the court reporter on December 27, 2004, was still in his possession. He realized the transcript had never been ordered.

¶ 13 The Bar presented evidence of numerous dates Respondent's trust account fell below a balance of $1650.00, despite the fact the client's check had been deposited and the

---

tled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

. . .

(d) Beginning July 1, 2004, a lawyer or law firm that holds funds of clients or third parties in connection with a representation shall create and maintain an interest-bearing demand trust account and shall deposit therein all such funds to the extent permitted by applicable banking laws, that are nominal in amount or to be held for a short period of time. . . .

**7.** Rule 1.3, RGDP, 5 O.S.2001, Ch. 1, App. 1–A:

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in

a criminal proceeding is not a condition precedent to the imposition of discipline.

**8.** Respondent sent a cashier's check to Phillips and Bowen for $1963.35, which included interest on the original amount.

**9.** Rule 1.4(b), RGDP, 5 O.S.2001, Ch. 1, App. 1–A:

(b) Where money or other property has been entrusted to any attorney for a specific purpose, he must apply it to that purpose. He may not avail himself of a counterclaim or set-off for fees against any money or other property of his client coming into his hands for such specific purpose, and a refusal to account for and deliver over such money or property upon demand shall be deemed a conversion. This does not apply to the retention of money or other property otherwise coming into the hands of a lawyer and upon which the lawyer has a valid lien for his services.

transcript had never been purchased. During this time period, he had an office sharing arrangement with an attorney. Respondent had assigned the bookkeeping responsibilities to a "temp" worker. When the other attorney had a settlement in a case, he brought an endorsed settlement check to the bookkeeper who made out checks to the parties according to the settlement agreement. Respondent signed the checks, only to discover the endorsement on the settlement check was invalid. The trust account checks were returned for insufficient funds, and the account showed a negative balance.

¶ 14 Respondent testified he learned he should have required the other attorney to set up a separate trust account. He also stated he terminated the bookkeeper's employment upon learning the trust account was not properly maintained. He and his staff also attended "trust account school" conducted by the Bar's Ethics Advisor, Travis Pickens, as further effort to maintain his trust account properly. Respondent testified he learned the proper way to set up and deposit retainers, bill against them, and disburse funds as appropriate, which was strikingly different from his procedures at the time he accepted funds from Brenda's brother and sister. He testified he understands the ultimate responsibility for his account rests with him as the lawyer and fiduciary.[10] He stated he never intentionally stole money from a client and never would. Currently, he and his assistant both check the monthly statements and reconcile them for each of his clients.

### STANDARD OF REVIEW

¶ 15 In bar disciplinary matters, this Court exercises its constitutional, non-delegable power to regulate the practice of law and the ethics, licensure, and discipline of its practitioners. *State ex rel. Oklahoma Bar Association v. Passmore*, 2011 OK 90, 264 P.3d 1238; *State ex rel. Oklahoma Bar Association v. Latimer*, 2011 OK 78, 262 P.3d 757. In this Court's *de novo* review, we are not bound by the findings of fact by the trial panel of the Professional Responsibility Tribunal (PRT), its view of the evidence or credibility of witnesses, or its recommendation for discipline. *State ex rel. Oklahoma Bar Association v. Pacenza*, 2006 OK 23, 136 P.3d 616; *Oklahoma Bar Association v. Garrett*, 2005 OK 91, 127 P.3d 600. We bear the ultimate responsibility for determining whether misconduct has occurred and, if so, the appropriate discipline to be imposed. *Passmore*, supra, at 1243; *Latimer*, supra, at 762–763. Before discipline is imposed, misconduct must be demonstrated by clear and convincing evidence. See Rule 6.12, RGDP,[11] 5 O.S.2011, Ch. 1, App. 1-A; *Latimer*, supra, at 762–763.

### RECOMMENDED DISCIPLINE

¶ 16 The Bar and the Trial Panel of the PRT recommend a private reprimand by this Court. Additionally, the Bar and Trial Panel recommend that Respondent be ordered to refund attorney fees in the amount of $1385.00, and to pay the costs of this proceeding. The Bar has filed an application for costs in the amount of $1229.09.

### STIPULATIONS AND MITIGATION

¶ 17 "Mitigating circumstances" were found by the Bar, as outlined in the Joint Stipulations, admitted as Exhibit 20. These

---

10. In *State ex rel. OBA v. Braswell*, 1983 OK 63, 663 P.2d 1228 (discussed *infra*, at ¶ 27), Braswell argued the inaction or neglect of his law clerk may have been the reason a statute of limitations passed unnoticed. Similarly, Respondent had argued his former employee incorrectly maintained his trust account. In both cases, the lawyer is the responsible party. If work is delegated to lay personnel, it is still the lawyer's duty to supervise and exercise control over the work product. *Braswell*, supra, at 1231–1232.

11. § 6.12. Evidence, Procedure and Standard of Proof

(a) So far as practicable, the disciplinary proceedings and the reception of evidence shall be governed generally by the rules in civil proceedings, except as otherwise herein provided; the respondent shall be entitled to be represented by counsel.
(b) On a charge of solicitation of professional employment through a lay person or agency, it shall not be necessary to prove that such lay person or agency received compensation.
(c) To warrant a finding against the respondent in a contested case, the charge or charges must be established by clear and convincing evidence, and at least two of the members of the Trial Panel must concur in the findings.

circumstances relate to Respondent's medical condition and circumstances in his personal life, including the death of his father in 2003, caring for his mother after his father's death, the legal duties associated with closing his father's estate, and later, the death of his mother in 2006. His medical condition, which he did not initially disclose to the Bar, was serious in nature. Between August, 2007, and July, 2011, he experienced a seizure disorder, emphysema, a lung abscess, COPD (chronic obstructive pulmonary disorder), hypertension, coronary artery disease, pulmonary embolism, positional vertigo, atrial flutter, and pneumonia. Testimony was received from Craig Key, Respondent's former law partner, that he remembers Respondent's condition to be serious as early as 2004. He stated he was concerned that Respondent may actually die as a result of it.

¶ 18 In the Trial Panel Report, the PRT found Respondent expressed extreme remorse for the way he handled Brenda's case and for his lack of communication with her family members. He was questioned about the Joint Exhibits which he offered with the Bar, containing his medical history, Exhibit 19. It was admitted at the Bar's request "to substantiate for the trial panel what Respondent has been medically experiencing the last several years." The trial panel noted the mitigating stipulations included in Exhibit 20, starting with paragraph 5.[12] In its conclusions of law the trial panel noted the Respondent admitted to professional misconduct under Counts I, II and III. It also referred to the cases cited by the Bar relating to the mishandling of client trust funds.[13] The panel concluded that when Respondent made the statement he would obtain a copy of the transcript of Brenda's criminal trial, he was under the false impression he had paid for, and ordered, the transcript. The panel, referred to *Dunlap I,* which held that allowing a client trust account to fall below the amount being held on behalf of a client, **"without more,** is also one of the less egregious forms of mishandling of client funds." *Dunlap I,* 880 P.2d at 368. The trial panel in this case distinguished *Dunlap I* and *II,* which dealt with a previously disciplined lawyer, noting this is Respondent's first instance of professional misconduct over a career spanning more than 34 years.

¶ 19 The trial panel noted that both the Bar and Respondent stipulated that Respondent should be issued a private reprimand by this Court and should be assessed the costs of these proceedings. The panel concluded, at paragraph 32:

> 32. The Trial Panel finds, based on the evidence presented and the totality of

12. 5. Respondent has been licensed and a member in good standing with the Oklahoma Bar Association since September 30, 1977.

6. Respondent has never been previously disciplined.

7. Respondent has accepted full responsibility for failing to properly supervise and manage his client trust account.

8. Respondent has been fully cooperative with the Office of the General Counsel in its investigation of this matter.

9. Respondent has expressed sincere remorse for his neglect and the harm his actions have caused to the reputation of the legal profession.

10. Respondent's failure to properly manage his trust account was due, in part, to errors committed by a staff member. Once Respondent became aware of problems with his office bookkeeping, he fired the staff member and assumed responsibility for handling all financial aspects of his law firm, himself.

11. Respondent's assumption of his law firm's financial duties occurred prior to the Oklahoma Bar Association opening this matter for investigation.

12. Respondent has voluntarily met Travis Pickens, Ethics Counsel for the Oklahoma Bar Association, to discuss proper trust account procedures and office management practices to prevent such errors from occurring again in the future.

13. In 2003, Respondent's father passed away unexpectedly and in addition to supervising the handling and closing of his father's estate, Respondent also assumed the primary care for his elderly mother and her affairs. In 2006, Respondent's mother also passed away.

14. Since 2007 to the present, Respondent has been intermittently hospitalized and treated for significant health issues including grand mal seizures, emphysema, a lung abscess, hypertension, chronic obstructive pulmonary disease ("COPD"), atrial flutter, coronary artery disease, a pulmonary embolism, positional vertigo, and pneumonia.

13. *State ex rel. OBA v. Dunlap,* 1994 OK 81, 880 P.2d 364 [*Dunlap I*]; *State ex rel. OBA v. Dunlap,* 2000 OK 8, 995 P.2d 1148 [*Dunlap II*]; *State ex rel. OBA v. Wagener,* 2002 OK 4, 48 P.3d 771 [*Wagener I*]; and *State ex rel. OBA v. Wagener,* 2005 OK 3, 107 P.3d 567 [*Wagener II*].

the circumstances herein, particularly the mitigating factors presented in this case suggest that Respondent is not likely to repeat his improper behaviors. Therefore the trial panel recommends the Respondent be issued a private reprimand by the Oklahoma Supreme Court; that he be required to refund $1,385.00 to the client for overpayment of fees and he be assessed the costs of these proceedings.

¶ 20 We agree with the trial panel's conclusion that Respondent was operating under the impression that the transcript had been purchased and ordered but not yet received. We believe that if he had inquired of the court reporter about the delay, he could have realized the transcript had never been ordered. However, there is no evidence that Respondent intentionally deceived Phillips or Bowen about ordering the transcript. We also find the evidence shows Respondent's trust account fell below $1650.00 due to sloppy bookkeeping practices and mismanagement through Respondent's improper delegation of the responsibilities for the trust account to someone besides himself and his lack of education on the proper procedures. This situation has apparently been corrected, with Respondent's resumption of control of the account and of reconciling the work done for his clients, appropriately billing against their retainers. This, in fact, occurred before Phillips filed the grievance. His participation in "trust account school" with Mr. Pickens of the Bar has obviously been instructive and beneficial to Respondent's law practice. The evidence supports the finding that it is unlikely Respondent will commit future infractions of Rule 1.15, ORPC, relating to the safekeeping of client funds.

### DISCIPLINE

¶ 21 Discipline is imposed in attorney disciplinary actions to preserve public confidence in the Bar. Our responsibility is not to punish, but to inquire into a lawyer's continued fitness to practice law, with a view to safeguarding the public, the courts, and the legal profession. *Latimer,* supra, at 768.

¶ 22 When the mishandling of funds is considered, we have defined three levels of culpability: 1) commingling; 2) simple conversion, i.e., applying a client's money to a purpose other than that for which it was entrusted; and 3) misappropriation, i.e., involving theft by conversion or otherwise. *State ex rel. OBA v. Funk,* 2005 OK 26, 114 P.3d 427, citing *State ex rel. OBA v. Parsons,* 2002 OK 72, 57 P.3d 865. Respondent's actions of letting his client trust account to become overdrawn, to allow it to drop below the transcript cost of $1650.00, and to fail to personally oversee the account's activity constitute mismanagement of his trust account. However, we hold his actions constitute the least serious level of culpability. There is no evidence he attempted to use his clients' money for unintended or improper purposes, and most certainly, there is no evidence that he misappropriated the funds. His actions were instead the results of sloppy and inadequate bookkeeping practices which he has taken positive steps to correct.

¶ 23 We agree that Respondent is unlikely to repeat trust fund violations in the future. He has taken the necessary steps to exercise primary responsibility for his trust fund. He has implemented the procedures explained by Mr. Pickens of the Bar for depositing retainers, billing against them, and moving the money to his operating account. He also learned the correct procedure for depositing fees directly into his operating account after work is performed on a non-retainer basis. Most significantly, it appears he has resumed the responsibility of oversight of his firm's trust account. We anticipate no future trust fund account violations. Moreover, we may consider mitigating circumstances in assessing Respondent's conduct. *Funk,* supra, at 439; *State ex rel. OBA v. Taylor,* 2000 OK 35, 4 P.3d 1242, 1255. In both *Funk* and *Taylor,* supra, we ordered public censures as the appropriate discipline.

¶ 24 More troubling, however, is the issue of Respondent's failure to pursue the criminal appeal and post-conviction relief for Brenda. We find the evidence supports a finding that he thought he had ordered the transcript because a check for it had been written. However, we find Respondent neglected Brenda's case and, therefore, did not

represent her competently. See Rules 1.1, 1.4, ORPC.[14]

¶ 25 After Respondent determined that an appeal would not be beneficial, he abandoned the idea altogether without making this clear to Brenda or her family. His attempt to obtain information from an informant about an alleged "set up" by the police led to Respondent's ultimate decision to forgo an attempt to exonerate her. Again, he did not communicate this to his client or her family. Although Respondent believed his decision not to appeal or pursue other relief was based on sound reasoning, he nevertheless kept it to himself.

¶ 26 Respondent testified that he decided against filing a "pointless appeal" based on ineffective assistance of counsel or excessive sentencing. When asked how he could adequately review what happened at trial, without the transcript, to determine whether there were other grounds for appeal, he stated he relied on Mr. Niemeyer, the prosecutor, and Mr. Smith. He also stated he should have ordered the transcript and read it himself.[15] Respondent's failure to do so prevented him from making an independent determination that no other basis for appeal existed. He was hired to pursue whatever post-trial relief was available to Brenda, not merely the grounds she and her family suggested. He neither made that independent determination nor explained his reasons to his client.

¶ 27 The Bar and the PRT have found that Respondent's actions in Brenda's criminal case were, in large part, explained by the events occurring in his personal life. This Court understands that lawyers do not practice law in a vacuum, untouched by personal events. We acknowledge that Respondent never made excuses or affirmative misrepresentations to Brenda or her family. We also note this is Respondent's first disciplinary action, that he has been cooperative with the Bar through this process, that he has shown remorse, and that he acknowledged that he should have read the transcript to determine for himself whether an appeal should have been filed. In *State ex rel. OBA v. Braswell*, 1983 OK 63, 663 P.2d 1228, we found that although the respondent had neglected a legal matter entrusted to him, he had made no affirmative misrepresentations to his client. We ordered a public censure as the appropriate discipline. See also The Bar recommended the cases of *State ex rel. OBA v. Dunlap*, 1994 OK 81, 880 P.2d 364 (*Dunlap I*) and *State ex rel. OBA v. Dunlap*, 2000 OK 8, 995 P.2d 1148 (*Dunlap II*) to the trial panel as guidelines for imposing a private reprimand in this case. *Dunlap I* involved trust fund mismanagement in which a public reprimand and admonishment were imposed. We found evidence of sloppy and incompetent record keeping instead of theft or conversion. *Dunlap II* involved an attorney's neglect of a client's petition for post/conviction relief. We imposed a 30–day suspension in that case. Although the Bar recommended a private reprimand in the present case, the Bar's counsel offered the *Dunlap* cases as the scenario closest to the facts presented here. Although the discipline imposed by this Court was, in neither case, a private reprimand, the Bar explained to the trial panel that other circumstances, not present here, were present in *Dunlap I* and *II* and required harsher discipline.[16] The Bar also offered *State ex rel. Oklahoma Bar Association v. Wagener* (*Wagener I*), 2002 OK 4, 48 P.3d 771, and *State ex rel. Oklahoma Bar Association v. Wagener* (*Wagener II*), 2005 OK 3, 107 P.3d 567. Wagener, who had been

---

**14.** See notes 4 and 5, *supra.*

**15.** He stated, "I should have tried to determine if there was some place, somewhere, where there was either reversible error due to prosecutorial misconduct, which I highly doubt because I think Mr. Smith would have told me that, if there had been, such as in closing argument or any of those kinds of things, or whether there had been any sort of evidentiary harpoons on the part of the police, but yes, I should have." Transcript of Hearing, July 18, 2011, page 41.

**16.** In *Dunlap I*, we acknowledged mitigating factors similar to those in the case at bar. While we

held that all cases involving mishandling of client funds are significant, we also held that imposing a suspension from practice would accomplish nothing and was unnecessary to protect the public or the integrity of the courts. We imposed a public reprimand. In the present case, the Bar's counsel told the trial panel that the Respondent in *Dunlap I* had previously received a private reprimand from the PRC, thus distinguishing it from the instant case in which Respondent has received no previous discipline. In *Dunlap II*, a 30–day suspension was ordered. We found Dunlap neglected his client's case by failing to file an application for post-conviction relief. In impos-

previously disciplined by the Bar, was hired to file a post-conviction proceeding. He failed to tender the record and the appeal was dismissed. Wagener made affirmative misrepresentations about paying for a transcript when he knew he had not done so. The Court found his neglect jeopardized his client's right to appeal. Additionally, we found he willfully attempted to conceal the appeal's dismissal, a fact distinguishable to the instant case. The discipline imposed on Wagener was a six-month suspension.

¶ 28 We find that a public censure is the appropriate discipline in this case and is supported by our case law. It will serve the purpose of protecting the public and the integrity of the courts. Attorney neglect and trust fund violations are serious matters for which more than a private reprimand is warranted.

### ATTORNEY FEES AND COSTS

¶ 29 At the PRT hearing, the parties agreed that the amount of $1385.00 should be refunded to the clients for overpayment of attorney fees. The trial panel agreed and further ordered that Respondent be assessed the costs of these proceedings. The Bar's application to assess costs in the amount of $1229.09 is granted.

¶ 30 Respondent is ordered to refund the clients $1385.00 for overpayment of attorney fees and to pay the costs of this proceeding in the amount of $1229.09 within ninety (90) days of the date of this opinion.

¶ 31 **RESPONDENT PUBLICLY CENSURED; ORDERED TO REFUND $1385.00 FOR OVERPAYMENT OF ATTORNEY FEES AND TO PAY COSTS OF $1229.09 WITHIN NINETY (90) DAYS.**

TAYLOR, C.J., COLBERT, V.C.J., KAUGER, WATT, WINCHESTER, EDMONDSON, REIF, GURICH, JJ., concur.

COMBS, J., recused.

ing discipline of a 30–day suspension, rather than a public censure as urged, we considered

that Dunlap and been previously disciplined twice.