STATE of Oklahoma ex rel. **OKLAHOMA BAR ASSOCIATION**, Complainant,

v.

**Paul J. KESSLER, Respondent.**

**SCBD No. 3925.**

Supreme Court of Oklahoma.

April 4, 1995.

Janis Hubbard, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Paul J. Kessler, Oklahoma City, pro se.

SUMMERS, Justice.

The Oklahoma Bar Association brings this disciplinary proceeding against Paul Kessler, a lawyer. The Professional Responsibility Tribunal recommends disbarment. Kessler, after the hearing was held on the first of two pending complaints, filed his resignation. This Court must consider whether Kessler's resignation should be accepted. The Bar Association urges that we refuse the resignation and order disbarment. If we refuse the resignation, we must determine whether discipline is appropriate.

Kessler is no stranger to disciplinary proceedings. On January 10, 1978, he was suspended for eighteen months for violation of the rule requiring an attorney to preserve the identity of funds and property belonging to a client. *State ex rel. Oklahoma Bar Ass'n v. Kessler,* 573 P.2d 1214 (Okla.1978). On October, 21, 1991, he was again suspended, this time for two years and one day, for commingling and misusing client funds. *State ex rel. Okla. Bar Ass'n v. Kessler,* 818 P.2d 463 (Okla.1991). Currently, he has two complaints pending against him. The first, OBAD # 1111 filed June 22, 1993, has resulted in the PRT's recommendation that Kessler be disbarred. The second, OBAD # 1121 filed September 13, 1993, has been continued until the first complaint is resolved.

In the first complaint the Bar Association alleges that Kessler mishandled client funds, and misrepresented his settlement authority to the trial court and the status of the case to his clients. This complaint centered around Kessler's handling of a case for Bill and Barbara Troegners. Kessler was serving as the attorney for the Troegners to help them with the sale of a small business. Mr. Troegner was in the military, and during the transaction, was transferred to Hawaii. After he was transferred one of the investors in the business filed suit, and the Troegners were brought in as third-party defendants. The matter was set for settlement conference, but Kessler failed to inform his clients of the conference.

Mr. Troegner first learned of the settlement conference about a month after it occurred. He testified that he had not extended settlement authority to Kessler, and had not authorized him to enter into a settlement of any kind. However, Kessler appeared before Judge William Myers for the conference, agreed to a settlement in the case and indicated to both the judge and the opposing attorney that he had full settlement authority. The opposing counsel testified at the bar hearing that Kessler represented that his authority was "absolute." The settlement required the Troegners to pay $1000.00 and assign a $4,500.00 promissory note to the defendants.

After the settlement conference Kessler wrote a letter to the Troegners regarding the settlement conference. This was the first time the Troegners has been notified of the conference. Kessler did not advise his clients that he had entered a settlement agreement on their behalf. Instead, the letter stated that a settlement offer of $1000.00 and assignment of the $4500.00 promissory note had been recommended. Kessler recommended that they agree to the settlement.

This letter did not reach the Troegners until October, more than two months after it was mailed. When he received the letter Mr. Troegner called Kessler. Kessler never told his client that he had already agreed to the settlement. Mr. Troegner refused the "proposed" settlement and agreed to pay $500.00 in settlement. Troegner sent Kessler a $500.00 check, but for unknown reasons the check did not clear the bank. Kessler contacted Mr. Troegner and asked that he send a cashier's check for $510.00 to cover the "settlement" and the cost of the returned check. Troegner immediately sent a personal money order for $510.00 to Kessler. Kessler deposited the check in his client trust account. The Oklahoma County Court Clerk has no record that this money was ever paid to the court for credit toward the judgment.

Meanwhile a motion to enforce the settlement was filed by the defendant in the case. In spite of the fact that Kessler did not have authority to enter the settlement and the client had expressly refused to the terms recommended by Kessler, Kessler signed the journal entry of judgment. Kessler did not

advise his client of this settlement nor of the judgment against him.

Pursuant to the judgment a garnishee summons was issued against the Troegners, in care of Kessler. Kessler falsely advised the opposing counsel that he had paid to the court clerk $500.00. Kessler then falsely advised his clients that he had paid the $500.00 to the court clerk. He did not advise them of the judgment. Instead he reported that he had made the offer of $500.00 and had heard nothing from the opposing parties until the garnishment. Mr. Troegner testified that he did not learn of the judgment until October 1992 when he made inquiry of the Oklahoma County Court Clerk.

In April of 1992, Kessler's client trust account was closed. A review of the account showed that not only had the $510.00 money order been deposited in the account, but that a bank error had been made and the original $500.00 amount (for the Troegner check that was returned) had never been deducted from the account. The $510.00 sent by money order was never returned to Troegner, even though it was not paid to the court clerk. The client trust account was closed after it became overdrawn, and the bank did not recover the owing money (including the $500.00 bank error).

This complaint was filed by the Bar Association on May 27, 1993. The Bar Association was forced to take extraordinary steps to provide Kessler with notice of the complaint and subsequent hearings because he repeatedly failed to accept certified mail, and refused to acknowledge that he had received notice of the pending complaint. After several attempts to reach Kessler a private process server was retained to personally serve him. The process server accomplished serving Kessler with a copy of the complaint, Notice of Selection and Appointment of Trial Panel, Notice of hearing, and the Order of the Professional Responsibility Tribunal directing him to respond to the Motion to Deem Allegations Admitted. A notice was also published in the Oklahoma Bar Journal.

On July 9, 1993 the hearing was scheduled but Kessler failed to appear and failed to respond. In order to give him every opportunity to present a defense the hearing was continued until September 2, 1993. The notice of the re-scheduling was mailed by certified mail to Kessler's roster address. Furthermore, a copy was hand-delivered to the post office and placed directly in the post office box of Kessler. A private process server was again hired, who made service on Kessler, providing him with copies of the earlier transcript, the amended scheduling order and the order resetting the trial date.

He again failed to appear. The Bar Association, through the General Counsel, presented its evidence. A recess was called and Kessler was paged throughout the building. Upon return and in Kessler's absence the Tribunal concluded the hearing.

Apparently, prior to the hearing, the Bar Association had presented Kessler with an affidavit of resignation. Kessler had refused to resign and did not sign the affidavit. While the record is unclear it appears that after this affidavit was sent, the Bar Association filed the second complaint against Kessler. The second complaint has been continued until the first complaint is resolved. Kessler mailed his affidavit of resignation to the Bar Association and the Bar acknowledges its receipt on September 13, 1993. Shortly thereafter, the Professional Responsibility Tribunal filed its report recommending disbarment.

The parties were given opportunity by this Court to brief the question of whether this Court should accept the voluntary resignation of Kessler. The Bar filed its brief on February 21, 1995. Kessler failed to file a brief or otherwise respond.

## ACCEPTANCE OF THE RESIGNATION

Rule 8.2, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, states that "the Supreme Court may enter an order approving the resignation pending disciplinary proceedings." [1]

1. The earlier version of this Rule *required* that the Supreme Court accept the resignation. See 5 O.S.1981, Ch. 1, App. 1–A, Rule 8.2. This "shall" language was changed to "may" in the recent amendment.

Governing a resignation is Rule 8.1 which states as follows:

8.1 Prerequisites for resignation

A lawyer who is the subject of an investigation into, or a pending proceeding involving, allegations of misconduct may resign membership in the Oklahoma Bar Association, and thereby relinquish the right to practice law, only by delivering to the Commission an affidavit stating that the lawyer desires to resign and that:

(a) The resignation is freely and voluntarily rendered, the lawyer is not being subjected to coercion or duress, and the lawyer is fully aware of the consequences of submitting the resignation;

(b) The lawyer is aware that there is presently pending an investigation into, or proceedings involving, allegation that there exist grounds for discipline, specifying particularly the misconduct alleged;

(c) The lawyer agrees that he may be reinstated only upon full compliance with the conditions and procedures prescribed by these Rules, and no application for reinstatement may be filed prior to the lapse of five years from the effective date of the resignation.

We have before refused to accept resignations that do not meet all the requirements set forth in this Rule. *See State ex rel. Oklahoma Bar Ass'n v. Perkins,* 757 P.2d 825, 828 (Okla.1988) (refused a resignation with a future effective date).

In *State ex rel. Oklahoma Bar Ass'n v. Gasaway,* 863 P.2d 1189 (Okla.1993), we refused the attorney's resignation because it "failed to specify with particularity the nature of the pending grievances, investigations and other pending proceedings as required by Rule 8.1." The rule serves a worthy purpose. It creates a formal record which includes all investigations and pending disciplinary matters. It brings before the public and this Court "previously confidential matters." *Id.* at 1195.

■ As the Bar Association points out, Kessler failed to strictly meet the requirements set out in Rule 8.2. His affidavit of resignation lists his prior suspensions, and states that he is aware that a two-count

complaint, OBAD # 1111, is currently pending. However, he makes no mention of the second pending complaint, OBAD # 1121. In the Bar's Objection to the Resignation of Paul J. Kessler, the Bar notes that the Affidavit of Resignation was mailed to Kessler on June 11, 1993, but was not returned until September 13, 1993. In the interim on July 23, 1993, the Bar filed the additional complaint, OBAD # 1121. This complaint shows that it was mailed to Kessler at his roster address.

■ Even though the omission of the second complaint from the affidavit may be a result of the timing and the difficulty in serving Kessler, he was mailed a copy of the second complaint and had opportunity to realize the omission and correct his affidavit. He has not done so, nor did he file a brief with this Court explaining his error. Under Rule 8.1, it is the attorney's duty to insure that his or her affidavit meets the requirements. Kessler has not done so, has not attempted to explain his omission, and has thus failed to comply with Rule 8.1.

■ Assuming for the sake of argument that we overlook the error in Kessler's affidavit, we must still determine whether his resignation should be accepted. The Bar Association urges that we exercise our discretionary power to refuse the resignation. Rule 8.2 was recently amended to replace the word "shall" with regard to the Supreme Court's duty to accept resignations. The Rule now states that this Court "may" accept a resignation. In *Gasaway* we recognized that the acceptance of a resignation by us is no longer mandatory, but is within our discretionary authority. *Id.* at 1194.

The Bar Association asks that we refuse Kessler's resignation. They point to his basic uncooperative behavior, which has necessitated a great deal of extra effort, money and time on the part of the General Counsel to bring these proceedings to this stage. The Bar notes that his misconduct negatively affected both his clients and the bank where he kept his client trust account. The Association points out that Kessler failed to file a written response as required by Rule 5.2, failed to return the affidavit of resignation in

a timely manner, failed to appear at the hearing although he was given numerous opportunities to appear and admittedly had notice, attempted to evade service, and was uncooperative at every opportunity.

Under these circumstances we agree that Kessler's resignation should not be accepted by this Court. Not only does his affidavit fail to meet the requirements of Rule 8.1, Kessler has, by reason of his uncooperative behavior, caused the amount of time, effort and financial resources expended by the Bar Association to be greatly increased. He has repeatedly refused to cooperate with requests made by the General Counsel, has avoided service, and failed to appear at any of the hearings.

## DISCIPLINARY ACTION

■ Before an attorney may be disciplined the Bar Association must show by clear and convincing evidence that the attorney committed the ethical violations charged. *State ex rel. Oklahoma Bar Ass'n v. Downing*, 863 P.2d 1111, 1112 (Okla.1993); 5 O.S. 1991, Ch. 1, App. 1–A, Rule 6.12. This Court has exclusive jurisdiction over bar disciplinary proceedings and must review *de novo* the findings of the Professional Responsibility Tribunal to determine whether the Bar Association has met its burden. *State ex rel. Oklahoma Bar Ass'n v. Carpenter*, 863 P.2d 1123, 1128 (Okla.1993); *State ex rel. Oklahoma Bar Ass'n v. Lloyd*, 787 P.2d 855, 858 (Okla.1990). The ultimate decision of whether discipline should be imposed rests with this Court.

■ The report of the PRT states that there is clear and convincing evidence that Kessler committed all the acts alleged and thus violated Rules 1.15 and 8.4. We agree. As for Rule 1.15 [2], the record shows that the money given to Kessler by the Troegners was never deposited with the court clerk, although he told the clients that it was used to settle the case and told opposing counsel that the money had been paid to the court clerk. The testimony of an investigator who analyzed the bank records of Kessler was that Kessler converted the money and used it for his own benefit. Furthermore, he converted money belonging to the bank, taking but never returning the money deposited in his account by error. Kessler gave no explanation for his actions. These actions violate Rule 1.15.

Rule 8.4 states that it is professional misconduct to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Kessler's dishonesty and misrepresentation permeates his entire representation of the Troegners. He represented to the Judge Myers he had full settlement authority, which he did not. The testimony at the hearing shows that he made the same misrepresentation to opposing counsel. He told the Troegners that the case could be settled for five hundred dollars when in fact he had already agreed to a sum much greater—against the express orders of the Troegners. He represented to them that he had paid the five hundred dollar settlement, and did not tell them of the true terms of the settlement agreement. Again, we agree that the evidence clearly and convincingly show a violation of Rule 8.4.

■ To determine appropriate discipline, we consider Kessler's conduct in the present case in addition to the fact that he has been

---

2. Rule 1.15(a) and (b) read as follows:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the written consent of the client or third party. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person shall promptly render a full accounting regarding such property.

disciplined for similar offenses twice before this current incident. *State ex rel. Oklahoma Bar Association v. Kessler*, 818 P.2d 463 (Okla.1991); *State ex rel. Oklahoma Bar Association v. Kessler*, 573 P.2d 1214 (Okla. 1978). There is also a pending disciplinary charge awaiting resolution at the present time. The prior offenses involved misuse of client funds and misrepresentation to a trial court. For these offenses, he was suspended for eighteen months and two years and one day, respectively.

In cases involving misconduct as serious as the one at bar we have found disbarment to be the appropriate sanction. *State ex rel. Oklahoma Bar Ass'n v. Gasaway*, 863 P.2d 1189, 1193 (Okla.1993) (violation of Rule 1.4 and Rule 1.15 coupled with the fact of prior discipline warrants disbarment); *State ex rel. Oklahoma Bar Ass'n v. Brown*, 863 P.2d 1108, 1111 (Okla.1993) (signing a judge's signature in violation of Rule 8.4 warrants disbarment); *State ex rel. Oklahoma Bar Ass'n v. Miskovsky*, 832 P.2d 814, 818 (Okla.1992) (conversion of client funds and misrepresentation to court warranted disbarment and imposition of costs); *State ex rel. Oklahoma Bar Ass'n v. Herlihy*, 827 P.2d 164, 167 (Okla.1991) (conversion of client funds warranted disbarment). Under the circumstances of the present case we find that disbarment is warranted. Over a period of years Kessler has shown a pattern of misusing client funds and misrepresentation. He has refused to cooperate with the investigation of this matter. There are currently charges pending against him for alleged similar misconduct.

It is hereby ordered and decreed that respondent Paul Kessler be disbarred and his name stricken from the roll of attorneys. Respondent is further ordered to pay costs of the proceedings in the sum of $1,695.22 within thirty days of the date this opinion becomes final.

All Justices concur.