2011 OK 78

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Caesar Cooleridge LATIMER, Respondent.**

**SCBD No. 5496.**

Supreme Court of Oklahoma.

Sept. 20, 2011.

Rehearing Denied Oct. 24, 2011.

Caesar Cooleridge Latimer, Tulsa, Oklahoma, Pro se.

Mark Alan Davidson, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Respondent.

WATT, J.:

¶1 In its second amended petition in this Rule 6 proceeding,[1] the complainant, Oklahoma Bar Association, charged the respondent, Caesar Cooleridge Latimer (Latimer/attorney), with five counts of professional misconduct. Charges involved: incompetent representation of multiple clients; failure to communicate with those clients; misrepresentations to clients, district court personnel, and to this tribunal; and failure to respond to grievance/disciplinary inquiries.[2]

---

1. On April 26, 2011, we issued an order directing the Bar Association and Latimer to show cause why the Rule 6 matter should not be recast and proceed under Rule 10, Rules Governing Disciplinary Proceeding, 5 O.S.2001, Ch. 1, App. 1–A. Latimer responded to the show cause order on April 26, 2011 in which he was adamant that he remained capable of the practice of law. On May 11, 2011, the Bar Association filed a response in which it acknowledged that there tended to be evidence in the record supporting a finding of incompetence based upon misfeasance or repeated neglect in dealing with the affairs of his clients. The Bar Association proceeded under Rule 6 rather than Rule 10 because there was not, at that time, any suggestion or indication that Latimer was mentally or physically incapacitated or unable to practice law. Because no such evidence was offered, the proceeding was properly commenced pursuant to Rule 6, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A. *State ex rel. Oklahoma Bar Ass'n v. Smith*, 2011 OK 8, ¶13, 246 P.3d 1090. Under the facts presented and in consideration of the agreement of the parties that the cause should be handled as a Rule 6 proceeding, the matter will proceed as such.

2. The allegations of the complaint encompass violations of the Rules of Professional Conduct, 5 O.S. Supp.2008, Ch. 1, App. 3–A, specifically: Rule 1.1 [Competent representation, legal knowledge, skill, thoroughness, and reasonable preparation.]; Rule 1.3 [Diligence and promptness in representation.]; Rule 1.4 [Reasonable consultation with and prompt reply to client inquires.]; Rule 3.2 [Reasonable efforts to expedite litigation.]; Rule 1.5 [Reasonable fees.]; Rule 3.3 [False statements of material facts.]; Rule 3.4 [Obstruction or destruction of evidence and knowing disobedient to a tribunal.]; Rule 8.1 [Failure to disclose facts necessary to correct misapprehension and to respond to a lawful demand for information.]; and Rule 8.4 [Violation of Rules of Professional Conduct, engaging in conduct involving dishonesty, fraud, misrepresentation, or prejudicial to the administration of justice.]. Allegations of violation of the Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A include: Rule 1.3 [Commission of act contrary to prescribed standards of conduct.]; and Rule 5.2 [Failure to respond timely, fully, and fairly to grievance inquiry.]. **The order of interim suspension issued based on the Bar Association's verified application for an order of emergency suspension containing allegations that the respondent was continuing to provide inadequate representation to individuals charged with crimes ranging from possession of illegal substances to first degree murder and the issuance of an opinion by the Court of Criminal Appeals reversing and remanding a cause for new trial upon a determination that Latimer had rendered ineffective assistance of counsel to a defendant convicted of robbery with a firearm, second-degree burglary, first-degree rape, and rape by instrumentation. The Bar Association's application was supported by an October 4, 2010 transcript of proceedings from Tulsa County in which the trial court urged the defendant in the cause to seek alternate representation based on the Court of Criminal Appeals' ruling and on the fact that Latimer did not appear for the hearing, had not communicated with the client prior to the hearing, and had not filed motions the attorney had indicated were appropriate to the cause.** *See, Wiley v. State of Oklahoma*, 2008 OK CR 30, 199 P.3d 877. It is unclear whether the attorney has engaged in the unauthorized practice of law during his suspension. In various documents filed with this Court, Latimer has indicated that

¶2 The grievance system exists to protect the public. It is this Court's responsibility to see that it is upheld whatever sympathies may lie with the attorney involved.[3] Upon *de novo* review[4] and in consideration of the facts presented and the discipline imposed in like contexts, we hold that the respondent should be suspended for two years and one day and pay costs of $2,042.42. Discipline is imposed in light of the clear and convincing evidence of the attorney's: incompetent representation of multiple clients; failure to communicate with those clients; misrepresentations to clients, district court personnel, and to this tribunal; evident contempt for the disciplinary process and this Court's constitutional mandate as the ultimate arbitrator in such proceedings; prior disciplinary history; and embarrassment to the legal profession and to this Court, undermining confidence in the Bar Association and its members. In mitigation, we readily acknowledge Latimer's prior service to this country, his community, his clients, the bar, and the judicial system.

## RELEVANT FACTS AND PROCEDURAL BACKGROUND

¶3 Latimer has been practicing law for approximately sixty (60) years.[5] During that time, he has provided services to indigent clients and championed unpopular causes.[6] There is one blemish on that service in the form of a three-month suspension ordered by this Court. The suspension was imposed in connection with a probate proceeding in which the attorney: failed to make statutorily required annual accountings; and did not file a final account and petition for distribution and discharge until after numerous requests to the estate had been made.[7]

¶4 The Bar Association filed its first complaint in this cause on January 8, 2008. Subsequently, it was amended on October 5, 2009 and again on August 25, 2010. The second amended complaint contains five counts, encompassing charges of misrepresentation, neglect, incompetence, lack of communication with clients, and failure to respond to disciplinary inquires. Although the record demonstrates multiple notices to the attorney, there has been no meaningful response to any of the complaint's allegations. On December 7th, 2010, the day of the hearing before the trial panel, Latimer gave several reasons for his failure to attend the proceedings: the lack of a ride to Oklahoma City; his health; and his need to be in Tulsa to appear at a client's hearing. The trial panel determined that none of the excuses were sufficient to stop the scheduled proceeding and sustained the Bar Association's earlier filed motion to deem the allegations of the second amended complaint admitted.[8]

¶5 The hearing before the trial panel was conducted on December 7, 2010. On December 10th, the Bar Association filed an application for order of emergency suspension indicating that the respondent was continuing to provide representation in two counties for criminal defendants and that he was failing to make appearances, comply with discovery requests, and adequately prepare. The application also informed the Court of an opinion promulgated by the Court of Criminal Appeals relating to one of the complaint charges in which Latimer was found to have provided a client with ineffective assistance

he has: a trial set in which he would be defending a defendant charged with murder; several pending civil cases; and two felony jury trials on district court dockets.

3. *State ex rel. Oklahoma Bar Ass'n v. McCoy,* 2010 OK 67, ¶2, 240 P.3d 675; *State ex rel. Oklahoma Bar Ass'n v. Spadafora,* 1998 OK 28, ¶33, 957 P.2d 114.

4. *State ex rel. Oklahoma Bar Ass'n v. Pacenza,* 2006 OK 23, ¶2, 136 P.3d 616; *State ex rel. Oklahoma Bar Ass'n v. Garrett,* 2005 OK 91 ¶17, 127 P.3d 600; *State ex rel. Oklahoma Bar Ass'n v. Anderson,* 2005 OK 9, ¶15, 109 P.3d 326.

5. Latimer's filing with this Court of July 7, 2011 entitled "Failure to Respond or Adjudicate Suspension Order." In a filing on May 6, 2011 entitled "Response to Order Made April 26, 2011," the attorney states he has been practicing law in Oklahoma for "over fifty years."

6. See, ¶24, infra and accompanying footnotes.

7. *State ex rel. Oklahoma Bar Ass'n v. McCoy,* see note 3, supra.

8. The day before the hearing, Latimer filed two documents, one headed as "Response Denying Allegation of Admission" and one entitled "Amended Response Denying Allegations of Admission."

of counsel.[9] A show cause order issued to which the attorney did not respond. The trial panel filed its report on February 4, 2011 finding that the respondent repeatedly refused to acknowledge the seriousness of his professional misconduct or take any responsibility for his actions and that he failed to effectively respond to the Bar Association's investigation or to participate in resolution of the grievances. It recommended a suspension of two (2) years and one (1) day. On February 17, 2010, we entered the order of interim suspension directing the attorney to comply with Rule 9.1, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A.[10] Only after the interim suspension was filed did Latimer begin filing multiple documents in the cause, none of which were responsive or appropriate.[11]

## JURISDICTION AND STANDARD OF REVIEW

¶ 6 This Court exercises the nondelegable, constitutional responsibility to regulate both the practice and the ethics, licensure, and discipline of the practitioners of the law. The duty is vested solely in this department of government.[12] Our *de novo*[13] review is not inhibited by the trial panel's having granted the Bar Association's motion to have the allegations against the respondent deemed admitted[14] because Latimer did not answer the formal complaints.[15] The same is true when the parties stipulate to misconduct and a recommendation for discipline.[16]

¶ 7 We bear the ultimate responsibility for deciding whether misconduct has occurred and, if so, what discipline is warranted. Neither the trial panel's finding of facts nor its view of the evidence or the credibility of witnesses bind this Court. The recommendation is merely advisory.[17] Before this Court will discipline an errant attorney, misconduct must be demonstrated by clear and convincing evidence.[18] To make this determination, we must be presented

9. *Wiley v. State,* see note 2, supra.

10. Only after the suspension order issued did Latimer attempt to make a reply concerning entrance of the order.

11. The documents were demoninated: Response to Several Oklahoma Bar Association Complaints Filed Against Me, filed March 28, 2011; Supplemental Response to the Various Oklahoma Bar Association Complaints Against Caesar C. Latimer, filed April 4, 2011; Corrected Suppllemental [sic] Response to the Various Oklahoma Bar Association Complaints Against Caesar C. Latimer, filed April 7, 2011; Respondent Anwer [sic] to Plaintiff's Waiver of the Reply Filed on April 4, 2011; Notice of Release of Files and Abstract to Michael Gibbs on April 9, 2011; Notice of Detriment, filed April 19, 2011; Notice of Duress and Wrongfully Conviction [sic] of Kendell Wiley, filed April 19, 2011; Notice of Jury Trial Setting, April 27, 2011; Response to Order Made April 26, 2011, filed May 6, 2011; Failure to Respond or Adjudicate Suspension Order, July 7, 2011; and Notice of Jury Trial Setting and Request that the Suspension Order be Speedily Ajuticated [sic], filed July 11, 2011.

12. Title 5 O.S.2001 § 13; *State ex rel. Oklahoma Bar Ass'n v. McCoy,* see note 3, supra; *State ex rel. Oklahoma Bar Ass'n v. Combs,* 2008 OK 96, ¶ 11, 202 P.3d 830; *State ex rel. Oklahoma Bar Ass'n v. Farrant,* 1994 OK 13, ¶ 13, 867 P.2d 1279.

13. *State ex rel. Oklahoma Bar Ass'n v. Pacenza,* see note 4, supra; *State ex rel. Oklahoma Bar Ass'n v. Garrett,* see note 4, supra; *State ex rel. Oklahoma Bar Ass'n v. Anderson,* see note 4, supra.

14. See, *State ex rel. Oklahoma Bar Ass'n v. Whitebook,* 2010 OK 72, ¶ 14, 242 P.3d 517; *State ex rel. Oklahoma Bar Ass'n v. Shomber,* 2009 OK 95, ¶ 28, 227 P.3d 157; *State ex rel. Oklahoma Bar Ass'n v. Gasaway,* 1993 OK 133, ¶ 3, 863 P.2d 1189.

15. Rule 6.4, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A providing in pertinent part:

"... In the event the respondent fails to answer, the charges shall be deemed admitted, except that evidence shall be submitted for the purpose of determining the discipline to be imposed."

16. *State ex rel. Oklahoma Bar Ass'n v. Combs,* see note 12, supra; *State ex rel. Oklahoma Bar Ass'n v. Taylor,* see note 17, infra; *State ex rel. Oklahoma Bar Ass'n v. McGee,* 2002 OK 32, ¶ 20, 48 P.3d 787.

17. Rule 6.15, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A; *State ex rel. Oklahoma Bar Ass'n v. Besly,* 2006 OK 18, ¶ 2, 136 P.3d 590; *State ex rel. Oklahoma Bar Ass'n v. Taylor,* 2003 OK 56, ¶ 2, 71 P.3d 18.

18. Rule 6.12, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A; *State ex*

with a record sufficient to permit an independent, on-the-record review for the crafting of appropriate discipline.[19]

¶ 8 Latimer did not appear at the disciplinary hearing. Nevertheless, there is record evidence that: the attorney received sufficient notice to satisfy due process requirements; the trial panel properly sustained the Bar Association's motion to deem the allegations admitted; and the Bar Association proved Latimer's misconduct by clear and convincing evidence and supported its recommendation of a suspension of two years and one day. The trial panel took evidence on all counts related to the amended complaint. The record submitted is sufficient for this Court to make the required decision regarding discipline.

## COUNTS DEMONSTRATING PROFESSIONAL MISCONDUCT [20]

### Count 1—Binns [21]

¶ 9 Donna Binns (Binns) hired Latimer to represent her in a civil foreclosure proceeding. Judgment was entered against her on September 12, 2007. The attorney appealed. A notice from the Supreme Court Clerk issued in the appeal providing that the record was either improperly filed or not appropriately certified by the Tulsa County Court Clerk. Latimer was given until the 21st of September to perfect the appeal. When the Court Clerk became aware of the order, Latimer was contacted and indicated that he would file a designation of record. The Court Clerk directed the respondent to provide copies of documents intended to be included in the appeal.

¶ 10 Latimer checked out the district court file on September 19, 2007. On the 25th, we issued an order refusing to grant Latimer's second request for an extension for the filing of the record. The following day, Latimer told the Court Clerk that the Records Division did not have the record in the cause. When the Records Division was contacted, they related that Latimer had checked out the record and had not returned it. The Court Clerk informed Latimer of this and the attorney agreed to look for it.

¶ 11 We dismissed the appeal on November 27, 2007. Three days later, Latimer asked the Court Clerk to reconstruct the file and was informed that he would be charged with the costs of doing so. Thereafter, the attorney rescinded his request. On January 29, 2008, the Court Clerk received an order directing a response to Latimer's allegations before this Court that the file was lost or unavailable and that his request for a copy of the missing file had been denied. The Assistant District Attorney responded stating that the file was not missing from the Court Clerk's office for some unknown reason as Latimer had represented but, rather, that Latimer had checked it out, not returned it, and declined to have the file reproduced at his expense. Testimony before the trial panel not only supports these facts but indicates that the attorney represented to the Court Clerk that this Court had ordered the Clerk to reproduce the record when no such order had issued and that Latimer had checked out

*rel. Oklahoma Bar Ass'n v. Funk,* 2005 OK 26, 114 P.3d 427; *State ex rel. Oklahoma Bar Ass'n v. Kessler,* 1995 OK 32, ¶ 23, 895 P.2d 713.

**19.** *State ex rel. Oklahoma Bar Ass'n v. Schraeder,* 2002 OK 51, ¶ 6, 51 P.3d 570; *State ex rel. Oklahoma Bar Ass'n v. Perceful,* 1990 OK 72, ¶ 5, 796 P.2d 627.

**20.** Although the trial panel granted the Bar Association's motion that the charges be admitted for failure of Latimer to timely answer the complaint, evidence was submitted for the purpose of determining the discipline to be imposed. Rule 6.4, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A.

**21.** On April 11, 2011, Latimer filed a document entitled "Respondent Anwer [sic] to Plaintiff's Waiver of the Reply Filed on April 4, 2011" to which is attached a hand-written statement signed by Donna Binns stating that she did not file a complaint nor authorize one to be filed in her name. The complaint was filed by Sally Howe Smith, Tulsa County Court Clerk, after it became clear that Latimer had misrepresented her office's alleged complicity in withholding the Binns' record resulting in the appeal being dismissed. Transcript of proceedings before the trial panel, December 7, 2010, Sally Howe Smith testifying in pertinent part at p. 22.

records in at least eight (8) other cases and not returned them.[22]

¶ 12 Latimer's actions resulted in Binns' appeal being dismissed. He misrepresented facts regarding the state of the record and its location to this Court and to the Court Clerk. The attorney attempted to shift the blame for not having perfected the appeal from himself to the Court Clerk. Latimer failed to respond to all requests of the Bar Association for a response to the allegations of the complaint. We deem admitted[23] that the respondent's actions violated Rules 1.1, 1.3, 3.2, 3.3(a)(1), 3.4(a)(c), and 8.4(a)(c)(d), Rules Governing Professional Conduct, 5 O.S. Supp.2008, Ch. 1, App. 3–A; Rule 1.3 and 5.2, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A; and warrant imposition of professional discipline.

### Count II—Noble/James

■ ¶ 13 Jesse L. James (James) passed away on June 19, 2004 leaving behind an adult son with disabilities. Several months before his death, Latimer drafted James' will. The estate included a 1974 Pontiac and a small home valued at approximately $3,000. James named his niece, Gloria Noble (Noble), to look after his son and as executrix of his will. Noble hired Latimer to probate her uncle's will. The attorney filed the probate proceedings on August 6, 2004 and testamentary letters were issued later that month. Since that time, Latimer has done nothing in the case.

¶ 14 In April of 2005, Noble attempted to get the deed to the real property transferred to her name at which time she was told the estate proceeding remained open. Over a period of approximately five (5) years, Noble tried to contact Latimer. Her efforts included: leaving numerous messages with his secretary; going by his office; approaching Latimer in the halls of the courthouse where the attorney would say he was going to complete the probate; writing to one of the local judges; and filing a complaint with the Tulsa County Bar Association which was forwarded

to the Oklahoma Bar Association after numerous unfruitful attempts to obtain responses from Latimer. Presently, the James estate remains open.

¶ 15 Latimer made no effort to respond to inquires either by the Tulsa County or the Oklahoma Bar Association concerning Noble's allegations. The respondent's actions violate Rules 1.1, 1.3, 1.4, 3.2, 8.1(b), 8.4(a)(c)(d), Rules Governing Professional Conduct, 5 O.S. Supp.2008, Ch. 1, App. 3–A; Rule 1.3 and 5.2, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A; warrant imposition of professional discipline; and are deemed admitted.

### Count III—Gibbs

■ ¶ 16 Michael Gibbs (Gibbs) hired Latimer in 2005 to probate Henry Berry's (Berry) estate so that he could obtain marketable title to real property obtained from the estate. For the next three (3) years, Gibbs made multiple unsuccessful attempts to contact the attorney at his office, at his home, through his secretary, and by leaving messages on his door. When he was successful in getting through to Latimer, the respondent promised that he would get the matter quickly resolved. When no progress was made on the case, Gibbs submitted a complaint to the Tulsa County Bar Association. As in the Noble/James situation, Latimer did not respond to inquires of the County Bar and the grievance was forwarded to the Oklahoma Bar Association. Latimer was asked to respond first in a letter dated October 27, 2008 and again in a letter written on November 24th. The Bar Association did receive a letter from Latimer on December 10, 2008 stating that he would close the estate and obtain marketable title to the real property shortly after the first of the year. The probate proceeding remains uncompleted and the respondent has failed to return the file as Gibbs requested.

¶ 17 Latimer's actions have been deemed admitted and are grounds for professional misconduct. He has violated Rules 1.1, 1.3,

---

**22.** Transcript of proceedings before the trial panel, December 7, 2010, Sally Howe Smith testifying in pertinent part at pp. 28–30.

**23.** All allegations of misconduct are deemed admitted, see ¶ 6, supra, and accompanying footnotes.

1.4, 1.5, 3.2, 8.1(b), 8.4(a)(c)(d), Rules Governing Professional Conduct, 5 O.S. Supp.2008, Ch. 1, App. 3–A; Rule 1.3 and 5.2, Rules Governing Disciplinary Proceedings, 5 O.S. 2001, Ch. 1, App. 1–A.

### Count IV—Wiley/Bar Association

¶ 18 Latimer represented Kendall De-Juan Wiley from February 12, 2007 until February 17, 2009 on charges of burglary, rape, and rape by instrumentation. At trial, the jury found Wiley guilty on all counts recommending life imprisonment plus forty-seven (47) years. The judgment and sentence were entered on July 20, 2007. Wiley was represented in his appeal before the Oklahoma Court of Criminal Appeals (Criminal Appeals Court) by court-appointed appellate counsel who was successful in having the cause reversed and remanded on grounds of ineffective assistance of counsel.

¶ 19 Latimer's conduct at trial is described in *Wiley v. State,* 2008 OK CR 30, ¶ 6, 199 P.3d 877 providing in pertinent part:

... In this case, Appellant's retained counsel provided little representation, much less the minimal effective assistance required by the Sixth Amendment. Based upon the record, counsel's conduct clearly fell below that expected of a reasonably competent defense attorney and Appellant has shown there is a reasonable probability that but for **counsel's unreasonable representation,** the result of the trial would have been different. **Due to defense counsel's obvious unpreparedness, his failure to comply with discovery requirements, to have the DNA independently tested, to know the names of his witnesses, to interview all alibi witnesses, to know the proper sentencing range for one of the charged crimes, and his abrupt conclusion of *voir dire,* despite advice from the trial judge not to pursue** **that course of conduct, the prosecution's case was not subject to meaningful adversarial testing....** Counsel's conduct in this case so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. [Emphasis supplied.]

¶ 20 The Bar Association opened a grievance based on the Criminal Court's opinion on February 17, 2009. Latimer was sent two requests for responses to the allegations of the complaint which were not answered. When a letter was received from the attorney on May 1, 2009, it was not responsive to the allegations of misconduct. The facts surrounding the complaint are deemed admitted. The respondent is subject to discipline, his actions violate Rules 1.1, 1.3, and 8.4(a)(d), Rules Governing Disciplinary proceedings, 5 O.S. Supp.2008 Ch. 1, App. 3–A, and Rules 1.3 and 5.2, Rules Governing Professional Conduct, 5 O.S.2001, Ch.1, App. 1–A.

### Count V—Martin

¶ 21 In April of 2007, Ronnie Lee Martin (Martin) was arrested pursuant to a traffic stop and vehicle search in which the police officer discovered drugs on Martin's person. Initially, Martin was charged with possession with intent to distribute. He hired Latimer to represent him. Subsequent thereto, the charge was amended to include a trafficking charge. Based on Martin's prior criminal record, the amendment made the punishment automatic life without parole upon conviction. The district attorney offered a plea bargain with a sentence of thirty-five (35) years, ten (10) years served and twenty-five years (25) on probation. Nevertheless, Latimer did not recommend that his client take the offer nor did he attempt to place Martin's mental capacity at issue although there was some evidence of incompetency.[24] The respondent filed multiple pre-

---

24. Transcript of proceedings before the trial panel, Katrina Conrad–Legler, attorney with the Oklahoma Indigent Defense System, testifying in pertinent part:

at pp. 57–59: "... Q And the only option for the judge at that point to [sic] sentence Mr. Martin is life without parole.

A Correct....

Q All right. And based upon the testimony you've just given, if you assume the fact that the district attorney, in this case, had offered Mr. Martin a sentence of 35 years, 10 in and 25 out, would that be more or add to your opinion that this was done improperly?

A Yes.

Q Go ahead.

trial motions on Martin's behalf, but he did not appear at the motion hearing and all but the motion for a jury trial were stricken.[25] Latimer waived his client's right to jury trial and called no witnesses during the proceedings. Martin was convicted of trafficking cocaine after three or more felony convictions and sentenced to life without the possibility of parole on February 12, 2008. Although Latimer filed a notice of intent to appeal, it was insufficient to meet jurisdictional requirements. Thereafter, he filed a motion for new trial; and, after the motion was denied, the respondent attempted to "save" the appeal by an out-of-time notice of intent to appeal. Latimer did not order a transcript of the trial but he did attempt to seek post-conviction relief. The totality of Latimer's actions extinguished Martin's right of appeal and any opportunity for him to obtain representation through the Indigent Defense System.[26] An attorney from the Indigent Defense System testified before the trial panel that, in her opinion, Martin did not receive effective assistance of counsel.[27]

¶22 Between February 19, 2008 and July 28, 2009, Latimer continued filing various motions before the district court. Repeatedly, he either failed to filed briefs when directed by the trial court or simply didn't appear when hearings were set on motions the respondent filed. Martin submitted a grievance on July 23, 2009, complaining of Latimer's failure to communicate and neglect relating to his trial representation and on appeal. As in the other causes, Latimer resisted all inquiries requesting responses to the allegations of the complaint. His conduct violated Rules 1.1, 1.3, 1.4, 3.1, 8.1(b), 8.4(a)(d), Rules Governing Profession Conduct, 5 O.S. Supp.2008, Ch. 1, App. 3–A, and Rules 1.3 and 5.2, Rules Governing Disciplinary Proceedings. The facts are deemed ad-

A I—I think—I can't tell if this was an attachment or an exhibit to his motion, but on page 18, it's just further evidence that something—there's some kind of mitigation in Mr. Martin's background by the fact that on—and it's even underlined, on May 15th of 1998, that he was submitted for examination in Eastern state for some kind of competency...."
at p. 75 "... Q Based upon your training and expertise, should Caesar Latimer have explained to Mr. Martin the mandatory sentence if he went to trial for the tafficking charge?
A Absolutely.
Q Based upon your experience and training, would failure to do so when there is an option—another option on the table, be tantamount to **ineffective assistance of counsel?**
A Yes, if there's another option on the table, yes...." [Emphasis provided.]
Transcript of proceedings before the trial panel, Ronnie Martin testifying in pertinent part at pp. 102–03:
"Q At any time during the representation by Mr. Latimer, was there a deal offered to you by the district attorney in Atoka County?
A Yes, ma'am.
Q What was that deal?
A 35 years, 10 in and 25 out.
Q And did you accept that deal?
A No, he told me not to. He told me that he could get me a better deal than that, which it didn't happen...."

25. Transcript of proceedings before the trial panel, Katrina Conrad–Legler, attorney with the Oklahoma Indigent Defense System, testifying in pertinent part at pp. 63–64:
"... It's like he file motions just to file motions and it just clutters up the—it clutters up the court system, it clutters up—it doesn't do the

client any good and it just seems to anger the judge, again to the detriment of the client...."
Latimer's failure to appear on this date was not an isolated incident. See, Transcript of proceedings before the trial panel, Ronnie Martin testifying in pertinent part at p. 104:
"... Had there been—had there been times when there was hearings set on motions when Mr. Latimer did not appear?
A He did not appear—he did not appear on several occasions and he never was ready when he did appear...."

26. Transcript of proceedings before the trial panel, Katrina Conrad–Legler, attorney with the Oklahoma Indigent Defense System, testifying in pertinent part at p. 73:
"... Q All right. Since Mr. Latimer did not perfect Mr. Martin's appeal, then his right to an attorney was also distinguished—extinguished.
A Correct.
Q He had a right, on the first appeal to an OIDS appellate lawyer, such as yourself.
A Correct...."

27. Transcript of proceedings before the trial panel, Katrina Conrad–Legler, attorney with the Oklahoma Indigent Defense System, testifying in pertinent part at pp. 75–76:
"... Q Based upon your experience and training and the briefs you've written and what you've read from this record, do you believe that Ronnie Martin received effective counsel in the trial and the pleadings that were filed on be [sic] his behalf by Caesar Latimer?
A I don't believe so, no...."

mitted. Martin's actions warrant imposition of professional discipline.

## MITIGATION AND ENHANCEMENT

¶ 23 The Bar Association presented no evidence of mitigation; however, the trial panel noted that Latimer is entitled to review of any factors that might serve to mitigate his discipline. We agree.

¶ 24 Mitigating circumstances may be considered in the process of assessing the appropriate quantum of discipline.[28] Although the Bar Association did not assert that there were mitigating factors to be considered in the cause, the Bar's prosecutor did acknowledge Latimer's service to under-represented members of the populace and his willingness to tackle unpopular causes.[29] This Court acknowledges and appreciates the attorney's illness during the span of the disciplinary proceedings, his military service, and the fact that he may have been subjected to actions of racial prejudice during his life span.[30] We recognize that his past reputation in legal representation was sound,[31] that he has been a pillar of the Tulsa community, and that some of his problems may arise from matters outside his control.[32] Nevertheless, we take exception to any and all allegations that the grievance procedure has been tainted by racial profiling or prejudice. There is absolutely no evidence in the record indicating that the respondent has not been afforded the identical due process available to all attorneys finding themselves in the

---

28. *State ex rel., Oklahoma Bar Ass'n v. McCoy,* see note 3, supra; *State ex rel. Oklahoma Bar Ass'n v. Colston,* 1989 OK 74, ¶ 20, 777 P.2d 920; *State ex rel. Oklahoma Bar Ass'n v. Raskin,* 1982 OK 39, ¶ 17, 642 P.2d 262.

29. Transcript of proceedings, December 7, 2010, closing statement of Gina Hendryx, providing in pertinent part at p. 123:
"... MS HENDRYX: Mr. Latimer has historically served an underrepresented portion of the population in Tulsa County. He has been respected for a number of years for his skills, as well as his willingness to take on unpopular cases, the cases where people didn't have the money to hire lawyers and for that, he's due our respect and our admiration as a member of the Oklahoma Bar Association...."

30. The respondent filed a statement by his doctor that he was suffering from shingles. In multiple filings with this Court Latimer refers to his service as a Marine "in the muddy fox holes in Okinawa." He notes his sixty (60) years of the general practice of law, his age as eighty-five (85) years, and alleges that, when he entered practice, he was told by a white fellow lawyer that the Oklahoma Legislature and Oklahoma Bar Association were white supremacy groups. He details the inability of family members to obtain treatment in "white hospitals," contends he was denied the right to attend school because of his race, makes numerous references to "Little Dixie," indicates that the disciplinary proceedings are "PART OF A CONSPIRACY TO STOP [HIM] FROM PRACTICING LAW", that he has been treated as if this were a "Dred Scott Case;" and that the Bar Association went to extreme measures to suspend him "on the Nation's President [sic] Day and for Black History Month." He characterizes the interim suspension as being "unfair" and being imposed because he is "black." Latimer contends that "[n]o other black attorney has suffered my experiences."

[Emphasis in originals.] In filings with the Bar Association, he states that "blacks have been mistreated by Oklahoma and I intend to take actions thereon."

31. In *Roberts v. State of Oklahoma,* 1977 OK CR 166, 571 P.2d 129, *cert. denied,* 434 U.S. 957, 98 S.Ct. 485, 54 L.Ed.2d 316 (1977), the Court of Criminal Appeals said of Latimer's representation of his client:

"... The record clearly shows that the defendant's counsel argued strenuously on his behalf, made appropriate objections and conducted the trial in a professional, competent manner...."

32. Transcript of proceedings before the trial panel, Katrina Conrad–Legler, attorney with the Oklahoma Indigent Defense System, testifying in pertinent part at pp. 79–80:

"... MR. PYEATT: Would you, in your own mind, would you think that Mr. Latimer is maybe just confused or just flat out incompetent now in the practice of law? In your area of expertise.
THE WITNESS: I think it's probably confusion due to his age, age or something that is leading to incompetence—
... MR. GILLILAND: I have a question. What, in your opinion—do you know Mr. Latimer's general reputation in the legal community, as far as his abilities as an attorney?
THE WITNESS: I think that he's had a very good reputation. I mean, he's been practicing for a long time and no one likes to do what I'm doing right now. I mean, it's—I'm a criminal defense attorney, too, so you know, you've got to worry about clients, too, and a—he's had a very good reputation. He's been a pillar in the community I think in Tulsa and—but—so I think he's had a very good reputation ..."

unhappy position of having to answer to allegations of misconduct.

¶ 25 The difficulties during the investigation and hearing of the cause were created largely not because the respondent did not have the opportunity to participate but because he refused to do so. Latimer repeatedly ignored inquiries by the Bar Association and did not appear for the hearing before the trial panel. The attorney did not file an answer brief in response to this Court's order setting a briefing schedule. No appropriate response was filed concerning our show cause order relating to a conversion of the matter from a Rule 6 to a Rule 10 proceeding.

¶ 26 Just as we take into account matters in mitigation in a disciplinary proceeding, any discipline imposed for prior misconduct must also be part of the equation in fashioning the appropriate degree of discipline.[33] In *State ex rel. Oklahoma Bar Ass'n v. Latimer*, 1972 OK 106, 499 P.2d 399, the respondent was suspended for three months for conduct the Court described as "an aggravated case of neglect." In that cause, Latimer failed to make annual accounts, or to file a final account and petition for distribution and discharge until after numerous requests to conclude the estates had been made. He also commingled estate funds with his own. Here, the respondent blames his circumstances on what he characterizes as a prejudicial system of justice. In his prior disciplinary proceeding, he attempted to shift the responsibility for his neglect to his clients.[34]

¶ 27 **RESPONDENT'S MISCONDUCT WARRANTS SUSPENSION FOR A PERIOD OF TWO YEARS AND ONE DAY AND THE PAYMENT OF COSTS OF THE PROCEEDING.**

¶ 28 Discipline is administered to preserve public confidence in the bar. Our responsibility is not to punish but to inquire into and gauge a lawyer's continued fitness to practice law, with a view to safeguarding the interest of the public, of the courts, and of the legal profession. Discipline is imposed to maintain these goals rather than as a punishment for the lawyer's misconduct.[35] Disciplinary action is also administered to deter the attorney from similar future conduct and to act as a restraining vehicle on others who might consider committing similar acts.[36] Discipline is fashioned to coincide with the restrictions imposed upon other lawyers for similar acts of professional misconduct.[37] Although this Court strives to be even-handed and fair in disciplinary matters, discipline must be decided on a case-by-case basis because each situation involves unique transgressions and mitigating factors.[38]

¶ 29 Recently, we have been presented cases where it has been necessary to reemphasize that the integrity of the judicial system demands lawyers, who are officers of

---

**33.** Rule 1.7, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A providing in pertinent part:

"... In fashioning the degree of discipline to be imposed for misconduct, the Professional Responsibility Tribunal and the Court shall consider prior misconduct ..."

**34.** *State ex rel. Oklahoma Bar Ass'n v. Latimer*, 1972 OK 106, ¶ 7, 499 P.2d 399 providing in pertinent part:

"... As a purported defense for his failure to apply rental collections to the claims having priority, he [Latimer] states that his testimony shows that he was 'following the direct orders of his client' ... Respondent also complains that he was not requested to promptly conclude the estates ..."

**35.** *State ex rel. Oklahoma Bar Ass'n v. Phillips*, 2002 OK 86, ¶ 21, 60 P.3d 1030; *State ex rel.*

*Oklahoma Bar Ass'n v. Bedford*, 1997 OK 83, ¶ 18, 956 P.2d 148; *State ex rel. Oklahoma Bar Ass'n v. English*, 1993 OK 68, ¶ 12, 853 P.2d 173.

**36.** *State ex rel. Oklahoma Bar Ass'n v. Pacenza*, see note 4, supra; *State ex rel. Oklahoma Bar Ass'n v. Badger*, 1995 OK 113, ¶ 13, 912 P.2d 312; *State ex rel. Oklahoma Bar Ass'n v. Hall*, 1977 OK 117, ¶ 12, 567 P.2d 975.

**37.** *State ex rel. Oklahoma Bar Ass'n v. Patterson*, 2001 OK 51, ¶ 29, 28 P.3d 551; *State ex rel. Oklahoma Bar Ass'n v. Eakin*, 1995 OK 106, ¶ 0, 914 P.2d 644; *State ex rel. Oklahoma Bar Ass'n v. Bolton*, 1994 OK 53, ¶ 16, 880 P.2d 339.

**38.** *State ex rel. Oklahoma Bar Ass'n v. Combs*, see note 12, supra; *State ex rel. Oklahoma Bar Ass'n v. Doris*, 1999 OK 94, ¶ 38, 991 P.2d 1015; *State ex rel. Oklahoma Bar Ass'n v. Rozin*, 1991 OK 132, ¶ 10, 824 P.2d 1127.

the court, to respect its authority.[39] Our judicial power in bar disciplinary proceedings extends to the rules promulgated which govern the proceedings. Lawyers are subject to these rules and are required to promptly and adequately respond to allegations of misconduct when lawfully requested to do so.[40] We take a dim view of lawyers who disobey court orders. A lawyer whose pattern of neglect extends to disobeying an order from this Court in a disciplinary action cannot be allowed to hold responsibility for the legal affairs of others.[41] Similar causes involving conduct resembling the respondent's in his failure to adequately respond in grievance proceedings have resulted in discipline ranging from suspensions of two years and one day to disbarment.[42]

¶ 30 The trial panel noted that Latimer repeatedly failed to acknowledge the seriousness of his professional misconduct or to take any responsibility for his actions. They were concerned with his failure to effectively respond to the Bar Association's investigation and to participate in any resolution of the grievances. Making last-minute excuses, Latimer did not attend the hearing before the trial panel. The trial panel recommended a suspension for two years and one day. The Bar Association joins in the disciplinary recommendation.

¶ 31 We agree with the recommendation of the trial panel and the Bar Association. Suspension for two years and one day is consistent with discipline imposed upon other lawyers committing similar conduct. Latimer may seek reinstatement to the practice of law following his period of suspension under Rule 11, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A. In addition, discipline having been imposed, the respondent stands charged with the payment of the costs of the proceeding.[43]

## CONCLUSION

¶ 32 While we are mindful of the respondent's current health issues and of the past important contributions the respondent has made to unpopular causes and clients, to his community, to this nation with his military service, and to the bench and bar, we cannot ignore the clear and convincing evidence of his current unfitness to practice law. Latimer has repeatedly failed competently and diligently to represent his clients. He has shown contempt for the Bar and for this Court by his refusal to respond to disciplinary inquiries, by making at least one deceptive filing regarding the state of a record on appeal, and by alleging, without a scintilla of evidence, that the proceedings against him have been tainted by prejudice.

¶ 33 In consideration of the facts of the cause and the recent disciplinary proceedings involving similar conduct, we order the respondent suspended from the practice of law for a period of two years and one day from

**39.** *State ex rel. Oklahoma Bar Ass'n v. Whitebook,* see note 42, infra; *State ex rel. Oklahoma Bar Ass'n v. Giger,* 2003 OK 61, ¶ 34, 72 P.3d 27;

**40.** *State ex rel. Oklahoma Bar Ass'n v. Whitebook,* see note 42, infra.

**41.** *State ex rel. Oklahoma Bar Ass'n v. Kinsey,* see note 42, infra.

**42.** *State ex rel. Oklahoma Bar Ass'n v. Whitebook,* 2010 OK 72, 242 P.3d 517 [Suspension for two years and one day appropriate for attorney who neglected client matters, failed to communicate with clients, and acted in the disciplinary proceeding with almost total disregard for the Supreme Court's authority.]; *State ex rel. Oklahoma Bar Ass'n v. Kinsey,* 2008 OK 98, 205 P.3d 866 [Disbarment warranted for attorney's failure to respond in disciplinary proceedings.]; *State ex rel. Oklahoma Bar Ass'n v. Beasley,* 2006 OK 49, 142 P.3d 410 [Failure to perform legal services, failure to communicate with clients, and failure to respond to Bar investigations warranted suspension of two years and one day.]; *State ex rel. Oklahoma Bar Ass'n v. Minter,* 2001 OK 69, 37 P.3d 763 [Two years and one day suspension ordered where attorney repeatedly showed contempt for the Bar and the Court by refusing to respond to disciplinary inquiries.]; *State ex rel. Oklahoma Bar Ass'n v. Jenkins,* 2001 OK 54, 27 P.3d 91 [Attorney suspended for two years and one day for neglecting clients, not keeping clients informed, charging unreasonable fees, and misrepresenting facts to a federal court.]; *State ex rel. Oklahoma Bar Ass'n v. Bolusky,* 2001 OK 26, 23 P.3d 268 [Attorney's engaging in three misrepresentations to three different clients, and failing to respond to the Bar Association on several occasions warranted suspension from the practice of law for a period of two years and one day.].

**43.** Rules 6.16, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A.

the date this opinion becomes final. Respondent is further ordered to pay costs of the proceeding in the amount of $2,042.42. Payment of costs shall be a pre-condition for filing any petition for reinstatement.

**RESPONDENT SUSPENDED AND ORDERED TO PAY COSTS OF THE PROCEEDING IN THE AMOUNT OF $2,042.42.**

TAYLOR, C.J., KAUGER, WATT, WINCHESTER, EDMONDSON, COMBS, GURICH, JJ., concur.

COLBERT, V.C.J., REIF, J., not participating.